W. K. AMICK, Appellant, v. EMPIRE TRUST COMPANY. — 296 S. W. . 798.

### Division One, May 24, 1927.

**1. MOTION TO DISMISS: No Separate Assignment of Errors.   Re**spondent's motion to dismiss the appeal on the ground that appellant's brief does not comply with Rule 15, in that it contains no separate and specific assignment of errors, will not be sustained where the only pertinent assignment that could be made would be one to the effect that the trial court committed error in giving respondent's peremptory instruction in the nature of a demurrer to plaintiff's evidence, and his points and authorities and argument as set out in his brief are addressed to that single question of error.

**2. COLLATERAL SECURITY: Note: Pledge.**   The delivery of a promissory note as collateral security for the payment of a principal note amounts to and partakes of the nature of a pledge.

**3. ———: Failure to Collect: Liability of Pledgee.**   The general rule is that the failure of the pledgee to comply with clear and positive directions of the pledgor, as principal debtor, to take prompt action to collect or sell the collateral and apply the proceeds upon the principal debt, constitutes such negligence on the part of the pledgee, or creditor of the principal debtor, as renders the pledgee liable in damages for any loss to the pledgor occasioned by such neglected action on the part of the pledgee.

4. **COLLATERAL SECURITY: Failure to Collect: Liability of Pledgee: Loss or Damage.** A suit by the pledgor against the pledgee for negligence in failing to collect the note or mortgage given as collateral security for the payment of the pledgor's principal note cannot be maintained without a showing that the pledgor has suffered loss or damage by reason of such negligence, and the burden is upon the pledgor to show loss or damage; and where the pledgor has assigned his cause of action to another, who sues the pledgee to recover damages, the same rule applies to such assignee. And where the proof is that the makers of the collateral note are all solvent and that there has been no depreciation in the value of the property covered by the mortgage, also given as further collateral security, and there is no evidence to the contrary, such assignee cannot recover damages, although the collateral note has matured at the time the suit is tried and the pledgee may have been negligent in delaying or failing to collect it and to realize on the mortgage.

5. ———: ———: ———: ———: **Conversion: Bailment: Return of Collateral: Payment of Principal Debt.** Until there is payment, or tender of payment, of the principal indebtedness by the pledgor, he is not entitled to a return or surrender to him of the collateral pledged as security for its payment, and until such payment or tender is made the pledgee is not chargeable with the conversion of the collateral in his possession. An allegation that the pledgee converted the collateral note to his own use and benefit by refusing to return it to the pledgor and by refusing to collect it, is not sustained, in an action against the pledgee for damages, where the pledgor's proof is that the collateral was in the pledgee's possession at the time of the trial, and there is no evidence that the pledgee has collected any money upon the collateral, or has failed or refused to credit any money so collected upon the pledgor's principal obligation, and no proof of tender made to the pledgee by the pledgor, or any one for him, of the principal indebtedness, and none that the pledgor or any one for him has demanded of the pledgee a return or surrender of the collateral.

Corpus Juris-Cyc. References: **Appeal and Error,** 3 C. J., Section 1588, p. 1414, n. 65. **Pledges,** 31 Cyc., p. 785, n. 2; p. 807, n. 15; p. 828, n. 49; p. 830, n. 64; p. 835, n. 23, 25; p. 836, n. 38; p. 856, n. 17.

Appeal from Buchanan Circuit Court.—*Hon L. A. Vories,* Judge

AFFIRMED.

*W. K. Amick* for appellant.

(1) "It is well settled that when a chose in action, such as bond, note, or accepted order on a third person is transferred and delivered to a creditor as collateral security, it is the duty of the pledgee to use reasonable care and diligence to make such collateral available; that he is bound to use proper exertions to render the collateral effectual for the purpose for which it was pledged; that if necessary he must bring an action against the maker of the collateral; and, that if, through his negligence or wrongful act or omission, the collateral is lost, he is accountable and liable in the same manner as a pledgee of goods and merchandise is liable to the pledgor if they are lost or destroyed through the pledgee's failure to give them the necessary pro-

tection and care.'' Bank v. Kilpatrick, 204 Mo. 119; Dibert v. D'Arcy, 248 Mo. 647; Cold Storage Co. v. Pitts, 176 Mo. App. 135; Troll v. Real Est. Co., 186 Mo. App. 196; First Natl. Bank v. Hahn, 197 Mo. App. 599. (2) The pledgee is a trustee and agent of the pledgor and must so handle the pledged property. Dibert v. D'Arcy, 248 Mo. 647. (3) There is really no difference between the duties of the mortgagee to his creditor, and the duties of a pledgee to his creditor. In both cases the property is conveyed as security and it must be used for that purpose. If it is used for some other purpose or if the creditor prevents it being used for that purpose, or fails to use it for that purpose, it is a violation of the contract of pledge (or mortgage) and is a conversion for which an action will lie for damages. Dobie on Bailments, p. 220. Tender of the indebtedness is not necessary before suit can be brought, where the security pledged has been converted. R. C. L. 677, sec. 39.

*Floyd M. Sprague* and *Chas. H. Mayer* for respondent.

(1) In an action by the pledgor against the pledgee for failure to enforce the collateral, it is not enough to show that it has not been collected, but it must appear from the evidence that the pledgee has been negligent and that loss resulted to the pledgor from such failure. 31 Cyc. 835; Troll v. Real Estate Co., 186 Mo. App. 206; Fourth National Bank v. Blackwelder, 81 Mo. App. 432; Guffy v. State Bank, 250 S. W. (Tex.) 303; Aldrich v. Goodell, 75 Ill. 452. (2) There is a total lack of evidence that defendant was negligent or that plaintiff, the pledgor's assignee, was in any way damaged because the collateral note had not been collected by the defendant. On the contrary, plaintiff's own undisputed evidence showed that the collateral note is collectible, and, moreover, that the paving equipment covered by the chattel mortgage given to secure the collateral note is worth $24,000, twice the face amount of the collateral note. (3) A previous tender of money to pay the debt secured is an indispensable condition precedent to bringing any action against the pledgee for conversion of the collateral. Schaaf v. Fries, 90 Mo. App. 111; Nevius v. Moore, 221 Mo. 360; McClintock v. Central Bank, 120 Mo. 127.

SEDDON, C.—This is an action wherein the plaintiff and appellant seeks to recover damages by reason of the alleged negligence of defendant and respondent in refusing and neglecting to make reasonable effort to collect a certain collateral note, and to enforce a certain chattel mortgage securing payment of said collateral note, which collateral note and mortgage had been delivered to defendant as security for the payment of a principal note made to defendant, Em-

pire Trust Company, by one J. P. Bass. The petition was originally cast in one count, and alleges that, on March 14, 1921, said J. P. Bass was indebted to the defendant in the sum of $12,000, for which he had given his promissory note to defendant, to secure the payment of which note said J. P. Bass deposited with defendant, Empire Trust Company, as collateral security, a promissory note dated October 27, 1920, due twelve months after date, for the sum of $12,000, signed by the Union Paving & Construction Company, David Littlejohn, J. P. Rackliffe and Gracie Knowles; that the payment of said collateral note was secured by a chattel mortgage on a large amount of paving machinery and other personal property; that said collateral note, at the time of its delivery by said Bass to defendant, and at the time it became due and payable, was a collectible note and all the persons signing said collateral note were solvent, and said note could and ought to have been collected by the exercise of ordinary care and diligence on the part of defendant; that, after said collateral note became due and payable, the defendant failed, refused and neglected to make any reasonable effort to collect said collateral note or to enforce the chattel mortgage securing same, or to enforce the payment of said collateral note from any of the signers thereof; that defendant permitted the signers of said collateral note to become insolvent and the security thereto to be wasted, to the damage of said Bass in the sum of $14,320; that, prior to the bringing of the suit, said Bass, for a valuable consideration, transferred and set over to plaintiff all his right, title and interest in and to the damages accruing to Bass because of the facts stated; wherefore, plaintiff prays judgment in the sum of $14,320. At the close of plaintiff's evidence, plaintiff asked and was given leave by the trial court to mend his petition by adding a second count thereto. The allegations of the second count are identical with those of the original, or first, count of the petition, except that, in lieu of the allegation that defendant "permitted the signers of said [collateral] note to become insolvent and the security thereto to be wasted," the second count alleges "that defendant converted said [collateral] note to its own use and benefit by refusing to return same to J. P. Bass and refusing to make any effort whatever to collect same." The answer is a general denial.

Plaintiff's evidence tended to show that sometime in 1919, the defendant Empire Trust Company, loaned said J. P. Bass the sum of $12,000, for which he gave defendant his personal promissory note. The note was renewed from time to time, until March 14, 1921, when Bass gave defendant his renewal promissory note for $12,000, due ninety days after date. As collateral security for the payment of his personal note, Bass delivered to defendant a promissory note for $12,000, dated October 27, 1920, due twelve months after date, with inter-

est at eight per cent per annum, payable to the order of J. P. Bass, and signed by Union Paving. & Construction Company, David Littlejohn, J. R. Rackliffe, and G. A. Knowles, as makers of said note, which note will be referred to in this opinion as the collateral note.. The payment of the collateral note aforesaid is secured by a chattel mortgage upon certain paving machinery and equipment, consisting of a portable asphalt plant; a five-ton Kelly Springfield road roller; a ten-ton Kelly Springfield road roller; a ten-ton Universal tandem roller; a three-wheel ten-ton roller; and one Keohring mixer. The chattel mortgage is dated December 20, 1920, and was given by the Union Paving & Construction Company, as mortgagor; to J. P. Bass, as mortgagee, and recites that the property described therein is the property of the Union Paving & Construction Company and is free and clear of all encumbrances, except a mortgage of $7,500 in favor of Mrs. J. P. Bass, to which mortgage the present mortgage is subject. Mr. Wright, vice-president of defendant Trust Company, called as a witness by plaintiff, testified that, at the time the collateral note was delivered to defendant Trust Company, he considered the collateral note good security for the payment of the Bass note, and that Mr. Littlejohn, one of the makers of the collateral note, owned some farm land in Nebraska and some city property in St. Joseph. Mr. Wright also testified that he "supposed" the paving machinery, described in the chattel mortgage securing payment of the collateral note, to be worth "somewhere in the neighborhood of $20,000."

J. P. Bass admitted by his testimony that his principal note to defendant Trust Company, dated March 14, 1921, became due and payable in June, 1921, several months prior to the maturity of the collateral note. In September, 1921, after the principal note of Bass to defendant Trust Company became due and payable, but before the collateral note was due, defendant brought a suit against Bass to recover payment of his principal note. Bass, in the early part of October, 1921, filed an answer in that suit, in which answer he pleaded payment in full of his principal note to the defendant, which note was the basis of that suit. The answer of Bass in said suit was filed before the maturity of the collateral note. Trial of the suit of the Empire Trust Company against J. P. Bass upon the principal note was not had until the early part of 1923, during the January, 1923, term of the Circuit Court of Buchanan County; after the maturity of the collateral note. Mr. Wright, vice-president of defendant Trust Company, testified that he "did everything in the world he knew how to force the case for trial," but could not get a trial until the early part of 1923. The trial of that cause resulted in a judgment in favor of the Empire Trust Company (defendant herein) against J. P. Bass in the sum of about $14,000, being the amount of the principal and accrued interest upon the personal note of J. P. Bass to the Trust

317 Mo.—11.

Company. The record herein tends to show that an appeal was taken by J. P. Bass from said judgment, and that the appeal was pending at the time of trial of the instant suit, which occurred on June 4, 1923.

Mr. Wright, vice-president of defendant Trust Company, testified: "Q. Did Dr. Bass ever ask you to collect this collateral note? A. Never. Q. Did he ever talk to you about not collecting it? A. He has. . . . Q. Did Dr. Bass ever ask you to proceed under this collateral? A. Never. Q. To bring suit on it? A. Never at any time. Q. Has anybody ever asked you to do so? A. No, sir." This testimony of Mr. Wright is contradicted by J. P. Bass, who testified that he repeatedly told Mr. Wright, vice-president of defendant Trust Company, to collect the collateral note. J. P. Bass testified: "Q. You told him the note [the J. P. Bass principal note] was considered paid, but did you tell him [Wright] to go ahead and collect the collateral note? A. Yes, sir. Q. Did you expect him to collect it? A. I thought he would. Q. When was the last time you told him that? A. I don't remember. Q. You never told him that after he brought suit against you in September, 1921? A. I expect I did. Q. Not what you expect—did you tell him that after you had filed your answer in that suit? A. I don't remember, but I told him a good many times before. Q. Did you tell him after September when he brought his suit in 1921—you claimed your note was paid? A. Yes, sir. . . . Q. Didn't you know the collateral was not due then? A. No, sir. I didn't pay attention to it. It was laying in the bank. I didn't have anything to do with it. It was left in his hands. . . . Q. This was the only note he had as collateral? A. I told him to go ahead and collect it. Q. Whether it was due or not? A. Yes, go and collect it."

Mr. Wright testified that, after the collateral note became due, the defendant Trust Company had done nothing toward the collection of the collateral note, and gave as the reason for defendant's non-action, that defendant had been informed by its attorney that defendant could not do anything, inasmuch as Bass had filed an answer in the suit of the Empire Trust Company upon the principal note of Bass, setting up a plea of payment of said principal note, and if Bass could prove that he had paid his principal note, then defendant had no title to the collateral note, and defendant would have to return the collateral to Bass. Wright testified further that defendant had not offered to return the collateral note to Bass; that the collateral note had not been renewed; and that defendant still retained the collateral note in its possession.

Plaintiff introduced in evidence, as an admission of defendant's officer, certain testimony of Mr. Wright taken in a former action be-

tween defendant Trust Company and Bass, as follows: "Q. What efforts, if any, have been made by the bank [defendant] to have this collateral note paid which was deposited by Dr. Bass? A. Hadn't been any, because we hadn't any right to take any action on the collateral. Q. You have that collateral note now? A. Yes, sir. Q. What do you intend to do with it? A. I don't know. . . . Q. Why is it you made no effort to collect the collateral note? A. We had no right to try to collect it. Q. Do you expect to make any effort in the future to collect it? A. That will depend on the advice of my attorneys. Q. But you have no intention at this time to try to collect it? A. I haven't consulted with them yet."

There is no direct or positive testimony in the record as to the solvency or insolvency of the makers of the collateral note. The only testimony we find in the record bearing upon the collectibility of the collateral note is that of Mr. Wright, the vice-president of defendant Trust Company. He testified: "Q. Is this note, this collateral note, is it collectible? A. I think so. . . . Q. Do you still regard this Union Paving Company note as good? A. Yes, sir, regard it as good as it ever was. Q. Do you know of any change that has been made in the situation of the parties signing this note, say in the last year? A. Not a thing, no, sir. Q. So, as far as you know, they still own this machinery, secured by this chattel mortgage? A. They do as far as I know."

One Joslin, a stationary engineer, testified that he had charge of the portable asphalt plant of the Union Paving & Construction Company, described in the chattel mortgage securing payment of the collateral note, for a period of three or four years; that the plant was last used by the Paving Company at Nebraska City, Nebraska, and that the Paving Company finished its work at Nebraska City about July 12, 1921, at which time Joslin drained the asphalt plant, took the brass parts therefrom, and boxed up the plant so that it would not deteriorate; that the reasonable value of the asphalt plant at that time was $15,000, and that the value of the other machinery and equipment described in the chattel mortgage made by the Union Paving & Construction Company was about $9,000, making the aggregate value of the portable asphalt plant and paving equipment covered by the chattel mortgage about $24,000. There is no evidence in the record that the value of said plant and machinery has depreciated since July, 1921. The record does not show that plaintiff, or his assignor, J. P. Bass, has made demand upon defendant for the return of the collateral note, or that either plaintiff or Bass has tendered to the defendant, or offered to pay, the amount of the principal and interest due defendant upon the principal note of J. P. Bass. Defendant offered no testimony in its behalf on the trial.

At the close of plaintiff's evidence, defendant requested a peremptory instruction in the nature of a demurrer to plaintiff's evidence, which instruction was given by the trial court. Thereupon, plaintiff took an involuntary nonsuit with leave to move to set the same aside, and judgment was rendered that plaintiff take nothing by his suit and that defendant go hence without day and recover of plaintiff its costs herein. After an unsuccessful motion to set aside the involuntary nonsuit and for a new trial, plaintiff appeals to this court.

I. At the outset, we are confronted with a motion to dismiss the appeal, filed by respondent, which motion was taken by us with the case upon the submission thereof. The ground of respondent's motion is that appellant's brief does not comply with Rule 15 of this court, which requires that "the brief for appellant shall distinctly allege the errors committed by the trial court," and, furthermore, that "no brief which violates this rule will be considered by the court." Respondent, by its motion, invokes the penalty for a violation of Rule 15, prescribed by our Rule 16, which provides: "If any appellant in any civil case fail to comply with the rule numbered . . . 15, the court, when the cause is called for hearing, will dismiss the appeal, or writ of error; or, at the option of the respondent, continue the cause at the cost of the party in default." Appellant's brief contains no separate and specific assignments of errors committed by the trial court. However, it is clearly evident from an examination of the record herein that but one assignment of error can be made, namely, that the trial court committed error in giving defendant's peremptory instruction in the nature of a demurrer to plaintiff's evidence, by reason of which action of the trial court plaintiff was forced to take an involuntary nonsuit. It is clearly evident that the points and authorities, and the printed argument, set out in appellant's brief, are addressed to that single question of error. Such being the case, we are constrained to overrule respondent's motion to dismiss the appeal and to consider the only assignment of error which can be raised upon the record before us. If other assignments of error were available to appellant, we might be disposed to sustain the motion to dismiss the appeal, for the reason that it is not the duty of this court to search the record for error which appellant does not see fit to distinctly point out to this court on appeal. But where there is apparently but one possible assignment of error, as here, and appellant's brief is clearly addressed to a discussion of such error, the court will give consideration to the same, although appellant does not assign the error in so many words. The respondent's motion to dismiss the appeal is accordingly overruled, and we pass to a consideration of the question whether the

*Assignments.*

trial court erred in giving defendant's peremptory instruction, thereby forcing plaintiff to take an involuntary nonsuit.

II. It is urged by appellant that respondent, as the pledgee of the collateral note and the chattel mortgage securing payment of said collateral note, holds the collateral as the trustee and agent of the pledgor, J. P. Bass, and if, through the negligence, wrongful act, or omission of respondent, the collateral is lost or its value impaired, then, under the established law of this State, respondent must be held liable in damages in the same manner as the pledgee of goods and merchandise (i. e., corporeal property) is liable in damages to the pledgor if such corporeal property is lost or destroyed through the pledgee's failure to give it the necessary protection and care. There can be no question, we think, but that the delivery of a promissory note as collateral security for the payment of a principal note amounts to, and partakes of the nature of, a pledge. [Winfrey v. Strother, 145 Mo. App. 115; Central Mo. Trust Co. v. Smith, 213 Mo. App 106, l. c. 109; Jones on Collateral Securities and **Pledge.** Pledges (3 Ed.) sec. 1.] The text-writer, in the last mentioned text, says: "The terms 'collateral security' and 'collateral' are used to designate a *pledge* of negotiable paper, shares of corporate stocks, or other incorporeal personalty, as distinguished from a *pledge* of corporeal chattels." Neither can it be questioned that the general rule, as laid down by this court, is to the effect that the failure of the pledgee to comply with clear and positive directions of the pledgor, or principal debtor, to take prompt action to collect or sell the collateral and apply the proceeds upon the principal debt, constitutes such negligence on the part of the pledgee, or creditor of the principal debtor, as renders the pledgee liable to **Negligence** the pledgor in damages for *any loss occasioned to the* **of Pledgee.** *pledgor* by such negligence on the part of the pledgee. The rule is so announced by this court in National Exchange Bank v. Kilpatric, 204 Mo. 119, and has been followed by the several Courts of Appeals in Union Cold Storage & Warehouse Co. v. Pitts, 176 Mo. App. 134, and First National Bank v. Hahn, 197 Mo. App. 593. That such is the established law in this State is conceded by the brief of respondent filed herein.

Respondent, conceding the foregoing established principles of law, contends, however, that the burden devolved upon appellant to prove that *loss or damage* actually resulted to appellant, or to his assignor, J. P. Bass, from respondent's failure to make reasonable effort to collect the collateral note and to enforce the chattel **Loss or** mortgage securing payment of the same, and that appel- **Damage.** lant failed to sustain the burden of proof, inasmuch as the proof contained in the record herein discloses *no resulting loss or*

*damage to appellant,* or to his assignor, J. P. Bass; hence, respondent insists that no error was committed by the trial court in giving defendant's peremptory instruction at the close of plaintiff's case. It is furthermore contended by respondent that there is a total lack of evidence herein that defendant was negligent in the handling of the collateral delivered to it by J. P. Bass, inasmuch as Bass, by his answer filed (prior to the maturity of the collateral note) in the suit brought by the Trust Company against Bass to collect the principal note of Bass, had pleaded payment in full of said principal note, and should Bass eventually prevail in said suit by establishing payment of said principal note, the pledge of the collateral will thereupon become ineffective and the Trust Company must return the collateral to Bass. Without discussing, however, the effect of the allegation made by Bass in his answer aforesaid, if proven, upon the duties and obligations of defendant Trust Company respecting the enforcement of the collateral delivered to it by Bass, we pass to a consideration of the question whether the burden is imposed upon appellant herein to prove that his assignor, Bass, has sustained actual loss or damage by reason of respondent's non-action in the enforcement of the collateral, and, if so, whether appellant has sustained the burden of proof in that respect.

The general rule is thus stated in 31 Cyc. 835: "In an action against the pledgee for failure to enforce collateral, it is not enough to show that it has not been collected; *but it must appear that the pledgee has been negligent, and that loss has resulted to the pledgor from such negligence.* Upon an action by the pledgor against the pledgee for failure to exercise due diligence in the enforcement of collateral, or where the pledgor sets up such lack of diligence as a defense to a suit on the principal obligation, the creditor must account for the collateral, as in the case of their loss, but having done so, the mere fact that they have not been collected is not even prima-facie evidence of negligence, and *the burden is on the pledgor to prove negligence and damage.*"

Van Zile, in his treatise on the Law of Bailments (2 Ed.) sec. 292, p. 275, says: "The pledgee is required to exercise ordinary diligence and is liable for ordinary negligence, so any *loss that is the result* of the ordinary negligence of the bailee while the property is in his custody and under his control would render him liable to the bailor or owner. . . . The burden of proof in such cases is upon the pledgor, as it is he that alleges the negligence, and *it is also incumbent upon him to show the damage occasioned by reason of such negligence.*"

Jones on Collateral Securities and Pledges (3 Ed.) sec. 702, p. 830, states the rule thus: "On the other hand, it is held that *actual loss* or prejudice to the pledgor *is the criterion of the pledgee's lia-*

*bility* for failure to charge the indorser or for negligence in prosecuting the collection of the collateral. Mere neglect on the part of the creditor in collecting the securities, without proof that loss has occurred through such neglect, will not make the securities his own.
. . . It would seem that, in order to hold the creditor liable for negligence or delay in enforcing the collateral note, it should be made to appear that the maker of that note was solvent at the time it matured, and *afterwards became insolvent.*"

Mr. Schouler, in his standard treatise on the Law of Bailments (3 Ed.) sec. 208, p. 214, remarks: "And even where bound to collect the security at all, the pledgee's responsibility, we must bear in mind, is limited to the *actual loss* to which his negligence may have contributed."

The foregoing rule, announced by eminent text-writers as aforesaid, to the effect that, in actions by the pledgor to recover damages by reason of alleged negligence on the part of the pledgee in failing to enforce or collect the collateral, the burden is upon the pledgor to prove the negligence of the pledgee and, also, resulting loss or damage to the pledgor, finds ample support in the adjudicated cases.

In Steger v. Bush, Smedes & M. Ch. (Miss.) 172, 189, the learned Chancellor of the State of Mississippi announced the rule in these words: "Now I admit that a party, who receives from his debtor the paper of a third person, as collateral security for his own debt, is bound to use due diligence in collecting it, and that, if it is lost by any delay of his, he becomes responsible for the amount, and will be considered as having made the debt his own. But something more than mere delay is necessary in such cases; because mere delay, if no loss followed as a consequence thereof, could not be made the foundation of any complaint on the one hand, or of responsibility on the other."

In Aldrich v. Goodell, 75 Ill. 452, 457, it was claimed that the pledgee of certain collateral notes, secured by mortgage on real estate, had negligently failed to foreclose a real estate mortgage securing payment of the collateral notes, the makers of which notes were insolvent. In ruling the matter, the court said: "We see no ground of liability (upon the part of the pledgee) for not foreclosing the Cory mortgage, because it has not been shown that any damage resulted therefrom. For neglect to foreclose that mortgage, there would be a liability only for the damages caused by such neglect. None here appear. . . . For aught that appears, the land is ample security for the debt, and the fair inference from the evidence is that it is so. The want of previous foreclosure of the mortgage does not appear to have occasioned damage."

In Kephart v. Butcher, 17 Iowa, 240, 249, the Supreme Court of Iowa, after reviewing the cases and legal treatises dealing with the

subject, announces the controlling rule as follows: "We therefore hold the better and true rule and criterion to be *actual loss or prejudice,* and consequently the creditor who has taken the note of a third person for a pre-existing debt is not debarred from resorting to the original consideration, although he has not presented the instrument or given notice of its dishonor, provided he can clearly and satisfactorily show that the debtor has not, in consequence of such omission, sustained any injury."

In Murphy v. Bartsch, 2 Idaho, 603, 606, plaintiff sued defendant upon his principal promissory note. Defendant interposed the defense that plaintiff had neglected to collect certain collateral pledged to plaintiff as security for the payment of the principal debt. Plaintiff recovered judgment for the full amount of the principal debt, and defendant appealed. Said the Supreme Court of Idaho, in ruling the appeal: "There is no actual evidence of his (pledgee's) neglect, unless the mere fact that he did not collect it (the pledged collateral) must be so construed. If, however, the appellant insists such is the legal conclusion, it still devolves upon him to show that such negligence resulted in his damage; for damage cannot be presumed—it must affirmatively appear. It would be preposterous for appellant to claim a benefit from the harmless negligence of respondent. The question, then, is not whether respondent was negligent, but whether he must be presumed, without proof, to have committed such neglect as resulted in appellant's damage. There is not in this record any such proof. Lawrence v. McCalmont, 2 How. 454, is a case where notes deposited as collateral security were not duly protested, and the court says: 'No evidence was shown at the trial to establish any loss or damage . . . for want of due protest and notice; . . . and, in the absence of such proof, we are not at liberty to presume that the agents did not do their duty.' " See, also, Guffey v. Bank (Tex. Civ. App.), 250 S. W. 301, to similar effect.

In Troll v. Real Estate Co., 186 Mo. App. 196, 206, plaintiff sued in equity to foreclose defendant's equity of redemption in certain collateral notes, together with a deed of trust on real estate securing payment of said collateral notes, and to have the collateral sold to pay the principal indebtedness of defendant. Defendant answered, denying any indebtedness to plaintiff and alleging that a parcel of the pledged property, known as the Temple Place property, had been discharged from the lien of the deed of trust, without the knowledge or consent of defendant, for the sum of $2,000, when in fact the equity of defendant therein was worth $5,000, and judgment over was prayed by defendant for the difference in value. In denying defendant's contention, the St. Louis Court of Appeals said: "It is unnecessary to pass upon the question of the value of the equity in the Temple Place property, further than to say that there is substan-

tial evidence to show that defendant sustained no loss by its release for $2,000. That being so, even if the release of that piece of property was not authorized, *defendant, not being damaged, is not in a position to complain.* [Jones on Collateral Securities (3 Ed.) sec. 515a; National Exchange Bank v. Kilpatric, 204 Mo. 119.] ''.

We have given due consideration to National Exchange Bank v. Kilpatric, 204 Mo. 119; Dibert v. D'Arcy, 248 Mo. 617; First National Bank v. Hahn, 197 Mo. App. 593, and other cases, cited by appellant in support of his claim of error on the part of the trial court. The cases cited by appellant, in our opinion, do not refute the above rule to the effect that the burden devolved upon plaintiff (appellant) to prove that he, or his assignor, J. P. Bass, sustained actual loss or damage by reason of defendant's neglect or failure to enforce the collateral. In the cases cited by appellant, the proof clearly showed that the collateral became worthless or greatly depreciated in value, because of the pledgee's failure to sell or collect the same; in other words, it clearly appeared from the proof in the cited cases that the collateral was lost, or depreciated in value, by reason of the pledgee's negligence or misconduct. There is no such proof in the case at bar. Here, plaintiff's proof tended to show that the makers of the collateral note were solvent at the time of the maturity of said note and that they were still solvent at the time of trial of the instant suit. Plaintiff's proof also tends to show that there has been no appreciable depreciation in the value of the paving plant and machinery covered by the chattel mortgage securing payment of the collateral note, and that the value of such plant and machinery exceeds the amount of the two encumbrances thereon, that is, the first mortgage for $7,500 in favor of Mrs. J. P. Bass and the second mortgage securing payment of the collateral note in question. There is not even a scintilla of evidence in the record, so far as we have been able to find, tending to show that the makers of the collateral note have become insolvent since the maturity of the collateral note, or that the paving plant and machinery, mortgaged to secure the payment of the collateral note, have substantially depreciated in value, or have been wasted. Assuming, without so deciding, that plaintiff's proof herein is sufficient to establish defendant's negligence in the handling of the collateral, nevertheless, we think that plaintiff's proof is insufficient to show that plaintiff, or his assignor, J. P. Bass, has suffered any actual loss or damage by reason of defendant's negligence, if any there be, in the premises. It therefore follows that plaintiff's action for the recovery of *damages* because of defendant's alleged negligence fails for want of evidence to prove or establish resulting *damage or loss* to plaintiff, or his assignor, Bass, and hence the court did not err in giving the peremptory instruction for defendant as respects the first count of the petition.

III. Neither do we think that the trial court committed error in giving defendant's peremptory instruction as respects the second count of the petition, under which count plaintiff seeks recovery of damages for the conversion of the collateral by defend-

**Conversion.** ant. Plaintiff's evidence clearly shows that the collateral was in defendant's possession at the time of the trial of this action, so that it cannot be said that the collateral had been sold or otherwise disposed of by defendant, thereby placing the collateral beyond the control or reach of defendant and beyond the possibility of restoration of the collateral to Bass upon the payment of Bass's principal note or obligation to defendant. Neither is there any proof herein that defendant has collected any sum upon the collateral and has failed or refused to credit any sum so collected upon Bass's principal obligation, thereby converting the proceeds of the collateral to defendant's use. There is no proof of tender made to defendant by plaintiff, or his assignor, Bass, of the amount of the principal indebtedness of Bass, nor is there proof in the record that plaintiff, or his assignor, Bass, has demanded of defendant the return, or surrender, of the collateral pledged.

In Schaaf v. Fries, 90 Mo. App. 111, wherein plaintiff, as administratrix of her deceased husband's estate, sued defendants to recover damages for the alleged conversion of certain shares of corporate stock pledged by plaintiff's deceased husband as collateral security for the payment of a principal indebtedness owing by him to one of the defendants, GOODE, J., speaking for the St. Louis Court of Appeals, said: "We are confronted at the threshold of the case with the question: Was the plaintiff bound to tender the amount of the promissory note as a condition precedent to maintaining this action to recover damages for the conversion of the stock which was pledged to secure its payment? . . . An action of trover assumes an immediate right to possession of the property in the plaintiff. But the pledgor has no right to possession of the pledge until he pays, or tries to pay, what he owes. Any damage he sustains by the wrongful sale on account of injury actually done to his property, or expense in getting it back, he may recover by an appropriate action; but the thing itself, or its value, only after he becomes entitled to its possession by keeping his undertaking. [Johnson v. Steer, 15 C. B. N. S. 330; Donald v. Suckling, 1 L. R. Q. B. 584; Halliday v. Holgate, L. R. 3 Exch. 299; Cooley on Torts (2 Ed.) 531.] The Schaaf estate still owes Theresa Fries [defendant] nineteen hundred dollars, if the sale was a nullity, and an action for the conversion of the shares will not lie against the defendants if no offer was made to discharge the debt. What is there to show the stock would not have been surrendered if the offer had been made? Is there any evidence to prove plaintiff was denied her right of redemption? We find none.

The shares were still in the reach of the original pledgee, or at least of the two defendants. It was within their power to restore them when the condition was performed which entitled the plaintiff to demand restoration. . . . At all events, a previous tender of money, to pay the debt secured, has been held indispensable by high and controlling authorities, besides those above cited, in cases similar to this one. [McClintock v. Central Bank, 120 Mo. 127; Talty v. Freedman's Savings & Trust Co., 93 U. S. 321.] They must be followed, and the result is, the plaintiff's case fails because no offer to discharge the note for which the stock stood pledged was ever made.''

In McClintock v. Central Bank, 120 Mo. 127, l. c. 133, which was an action to recover damages for the alleged conversion of corporate stock, this court, speaking to the same question, said: ''But it must be remembered that there has been no payment, tender, or offer to pay the amount of the indebtedness which the stock was pledged to secure, and this is an action to enforce legal, as distinguished from equitable, rights. Plaintiff has at no time asked to redeem. The evidence shows that the sale of the stock did not realize a sufficient sum to discharge the debt. Neither is there any proof in the case that the true value of the stock, when sold, or at any time, exceeded the sum for which it was pledged. There is nothing, therefore, before the court which, by the most liberal construction of the law of bailment, could be held as proving that plaintiff was either entitled to the immediate possession of the pledged stock or to any part of the proceeds of its sale. The transfer by the pledgee, even though we assume it wrongful, did not have the effect to wipe out the debt, which the stock was pledged to secure. Until that debt be in some wise got out of the way, plaintiff has no legal right to the stock or its proceeds. This is but a statement of elemental principles of the law of pledges, and no elaboration of it is needful at this time. [Talty v. Freeman's Savings Co., 93 U. S. 321.]''

In the later case of Nevius v. Moore, 221 Mo. 330, l. c. 360, we said: ''The law is well settled that the obligation and duties of a pledgee and pledgor are mutual and reciprocal. While the pledgor must be ready and willing, and offer to pay the indebtedness before demanding a return of the collateral, the pledgee also, when he demands payment of the original indebtedness, must be ready to return and deliver to the pledgor the collateral left with him as security. [Richardson v. Ashby, 132 Mo. 238; Hagan v. Bank, 182 Mo. 319.] The appellant, Nevius, in this cause has never offered to pay his notes for $800 made to Moore, nor does he make such offer now, either in his pleading or otherwise, except by requesting that an accounting be taken between himself and Moore; that his claim against Moore be set off against his notes made to Moore and that he have judgment for the balance. . . . It may be that appellant, Nevius, is en-

titled to have the McClellan lots conveyed to him by Moore upon the payment by him (Nevius) of the debt of $800, together with interest, but the difficulty of entering a decree of that character is that the appellant, Nevius, has not performed, nor offered to perform, what the law requires of him, that is, the payment of, or a tender of payment of, the notes for $800 executed to the respondent Moore.''

The case of Hagan v. Bank, 182 Mo. 319, cited by appellant, is not applicable to the facts in the instant case. In that case, the pledgee, by its conduct, had dispensed with the necessity of a tender of payment of the principal debt by the pledgor in that the pledgee expressly denied the right of the pledgor to redeem the collateral. It was therefore ruled in that case that, inasmuch as a tender under those circumstances would have been an idle ceremony, a court of equity in which the pledgor sought equitable relief would not turn him out of court for failure to perform an ineffectual and useless act.

Appellant, in our opinion, failed by his proof herein to show a tender by himself, or by Bass, his assignor, of the amount due and owing to defendant upon the principal note or indebtedness of Bass, or to show a willingness on their part to pay and discharge such principal indebtedness. Hence, the trial court committed no error in giving defendant's peremptory instruction as respects the second count of the petition.

We believe that the judgment of the circuit court was right and should therefore be affirmed. It is so ordered. *Lindsay, C.,* concurs; *Ellison, C.,* not sitting.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur, except *Gantt, J.,* not sitting.