ANTHONY BROS. *v.* BANK OF SEBASTOPOL *et al.**

(Division B. Sept. 24, 1928.)

[118 So. 198. No. 27038.]

374

*Corpus Juris-Cyc. References: Banks and Banking, 7CJ, p. 620, n. 16; p. 621, n. 31; p. 622, n. 41; p. 623, n. 51; p. 624, n. 54; On measure of damages for the neglect of a collecting bank to make due presentation of paper intrusted to it for collection see annotation in 1 L. R. A. (N. S.) 246; 3 R. C. L. 632.

*Percy M. Lee,* for appellants.

*Paul Dees,* for appellee, Bank of Philadelphia.

*J. D. Carr*, for appellee, People's Bank of Union.

Argued orally by *Percy M. Lee,* for appellant.

ETHRIDGE, P. J.   Anthony Bros., a partnership, doing business at Sebastopol, Miss., filed their bill in the chancery court against the Bank of Sebastopol, the People's Bank of Union, and the Bank of Philadelphia, alleging that they are merchants engaged in a mercantile business and in the buying of cotton, and that on the fourth day of October, 1926, they had on hand a large amount of cotton, which they undertook to dispose of by oral agreement with one W. D. Gillis, an agent of Threefoot Bros. & Co., at Philadelphia, Miss.; and that in consequence of the conversation with said Gillis they were instructed to draw a draft on the Threefoot Bros. & Co.,

Philadelphia, Miss., for eighty bales of cotton, with bill of lading and numbers, pieces, and weights of the cotton attached thereto; that they accordingly drew the said draft for four thousand eight hundred eighty-four dollars and sixty-nine cents on said date, which they deposited with the Bank of Sebastopol, receiving credit for the full amount on their account at said bank, which bank forwarded the draft with bill of lading attached to its correspondent, the People's Bank of Union, at Union, Miss., and the latter bank, in turn, forwarded it to the Bank of Philadelphia, Philadelphia, Miss., for presentation and payment.

Appellant further alleges that, relying upon the provision of law relative to instruments of this kind, and having no notice that the draft was unpaid, and believing that it had been promptly paid, used the proceeds of same in paying their creditors, and were not apprised of any default on the part of Gillis in accepting and paying the draft until about the 1st day of November, 1926, when they were informed by the Bank of Sebastopol that a letter had been received from the People's Bank of Union to the effect that Gillis would be slow in taking care of the draft, and that it should be charged back to the complainants; that upon receipt of such notice they exercised the highest degree of care in endeavoring to clear the matter up; that the said draft was, in fact, not returned to them until about the 13th day of November, 1926, when it was delivered, and they repaid the Bank of Sebastopol the amount of the said draft.

Appellant further alleges that the draft contained no waiver of protest or notice, and relied upon prompt notice of its dishonor or nonpayment, which was not given, and that the price of cotton on the date of sale was higher than on the 1st day of November, the difference in prices on the lot of cotton amounting to one thousand three hundred dollars.

The banks severally answered the bill, from which answers and proof in the case it appears that the draft and bill of lading were forwarded to the Bank of Union by the Bank of Sebastopol, and that bank, in turn, forwarded it to the Bank of Philadelphia. Threefoot Bros. & Co. neither accepted nor paid the draft.

It appears from the answer of the Bank of Philadelphia that it notified the Bank of Union promptly of the nonpayment of the draft, and it was instructed to forward it for collection. It further appears from the evidence that Anthony Bros. retained the cotton, and did not sell it until the following May, when cotton prices had advanced, and it was sold for a higher price at that time than cotton was selling for when the draft and bill of lading were originally made out on the 4th day of October, and that, in fact, no loss accrued to Anthony Bros. in the sale of the cotton. Suit, however, was filed in January prior to the sale of the cotton in May, and the suit proceeded upon the theory that the complainant had the right to recover the difference in the price of cotton on the 4th day of October and the 1st day of November, at which time they first had notice of the failure of Threefoot Bros. & Co. to accept the draft and pay for the cotton.

It appears that after receiving this notice, Anthony Bros. went to Philadelphia, Miss., several times, seeking to adjust the matter with Threefoot Bros. & Co., and incurred some expense in reference thereto. It also appears that they were somewhat embarrassed in taking care of the draft when it was charged back to them, to the extent that they had some difficulty in meeting their other bills payable. It does not appear that there was any agreement between the Bank of Sebastopol and Anthony Bros. that the latter would take the cotton at its then market value; but, on the contrary, Anthony Bros. paid the Bank of Sebastopol the full amount of the orig-

inal draft, and retained the cotton, without making any attempt to sell the same at that time.

It is settled law that a bank receiving a note, draft, or other commercial paper is bound to use reasonable diligence and skill in handling the paper, and that it is liable for negligence in failing to handle the same in a proper manner. *Agricultural Bank* v. *Commercial Bank*, 7 Smedes & M. 592; *Commercial & Railroad Bank* v. *Hamer*, 7 How. 448, 4 Am. Dec. 80; *Bank of Shaw* v. *Ransom*, 112 Miss. 440, 73 So. 280. But it is also settled that the plaintiff must aver and prove his damages, and that he must be damaged in fact, by the transaction. 7 C. J., section 297, and cases cited in note 51; see especially *Jefferson County Sav. Bank* v. *Hendrix*, 147 Ala. 670, 39 So. 295, 1 L. R. A. (N. S.) 246 and case note; *Hendricks* v. *Jefferson County Sav. Bank*, 153 Ala. 636, 45 So. 136, 14 L. R. A. (N. S.) 686.

On receipt of the notice that the draft was dishonored, appellant had the right to sell the cotton for the account of the bank, and to hold the bank for its negligence, for the difference in value of cotton on the date that the notice should have been received by the exercise of due diligence, and the price on the date of such notice. But it did not have a right, in the absence of agreement to that effect, to take the cotton, hold it as their own, and treat the market price at which it could have been sold as though it had actually been sold, and afterwards sell it at a profit and keep the profit, and, in addition thereto, recover the difference in the market price on the said two dates.

On the facts in this record the appellant has suffered no loss by reason of the transaction, and the chancellor was correct in dismissing the bill.

*Affirmed.*