JAHNCKE DRY DOCKS, INC., A CORPORATION, APPELLANT, v. MC-KELVEY CONSTRUCTION COMPANY, A CORPORATION, RESPONDENT.*
—16 S. W. (2d) 676.

St. Louis Court of Appeals.  Opinion filed May 7, 1929.

*Corpus Juris-Cyc References: Agency, 2CJ, section 735, p. 965, n. 36; Appeal and Error, 3CJ, section 1588, p. 1415, n. 67.

*Abbott, Fauntleroy, Cullen & Edwards* for appellant.

*Greensfelder, Rosenberger & Grand* for respondent.

NIPPER, J.—This is an action brought by the Jahncke Dry Docks, Inc., of New Orleans, Louisiana, against the McKelvey Construction Company of St. Louis, in which plaintiff seeks to charge the McKelvey Construction Company for certain work and labor done, and materials furnished, in the construction of a conveyor in New Orleans for the United Fruit Company. In accordance with the allegations of the petition the evidence discloses that an agreement was entered into between the Benjamin H. Alvey Corporation of St. Louis, and the plaintiff, by the terms of which, plaintiff was to proceed with the erection of a conveyor to be used by the United Fruit Company, according to plans and specifications furnished by the Alvey Corporation, for the sum of $2550. The plaintiff sold and delivered certain goods, rendered certain services, and incurred expenses amounting to about two thousand dollars over and above the original contract. The original $2550 was paid and there is no dispute about that.

This suit seeks to charge the McKelvey Construction Company with the balance, as the undisclosed principal of the Alvey Corporation. The testimony of the superintendent of the plaintiff company showed that he met a Mr. Haley, who represented the Alvey Corporation, in New Orleans, and after inspecting the plans and specifications he submitted a bid to Mr. Haley, and an estimate was sent to the Alvey Corporation, and was accepted by the same. This superintendent testified to the following conversation with Mr. Haley at the time he entered into the contract.

"Q. What arrangement, if any, did Mr. Haley make for the payment of this work? A. In our general course of business, before proceeding with a job I always refer the matter to our auditor or secretary to have him pass on same before proceeding with the work. In this particular instance I inquired of Mr. Haley who would be responsible for the payment for the work done. He told me that all bills in connection with the work would be paid by the McKelvey Construction Company of St. Louis.

"Q. Did Mr. Haley explain to you, yourself, or give any reasons why the McKelvey Construction Company would pay this bill? A. Mr. Haley explained to me that the McKelvey Construction Company was a part of and was financing the Alvey Construction Company.

"Q. Did Mr. Haley make any other statements to you concerning the relations between the Benjamin H. Alvey Corporation and the McKelvey Construction Company? A. I think Mr. Haley told

me that Mr. McKelvey himself had sent him down on this particular job.

"Q. Did he explain to you anything about the relations between the two companies? If he did, you can say so. A. No other than that he was sent here by McKelvey and that the McKelvey Construction Company was a part of the Alvey Corporation and were financially responsible for the work."

This superintendent testified further that he had a conversation with Mr. Alvey, president of the Alvey Corporation. This testimony as brought out by examination is as follows:

"Q. Did you have any discussion with Mr. Alvey as to the relation between the Alvey Corporation and the McKelvey Construction Company? Mr. Metcalfe (resuming): A. I had a conversation with Mr. Alvey concerning the relationship of the Benj. H. Alvey Company and the McKelvey Construction Company, but, as previously stated, not with Mr. Haley. Mr. Alvey informed me that previous to this time that be had organized a company and performed work similar to this for several years, afterwards disposing of same and entering into an agreement not to go into this particular business again for a certain number of years, but on the expiration of this agreement he and the McKelvey Construction Company organized a company in the office of the McKelvey Construction Company to be known as the Benj. H. Alvey Corporation, and the prime object of the company was to manufacture and operate unloaders, conveyors, transmission machinery, similar to the ones manufactured when he was in business previous to this time.

"Q. Mr. Donaldson, were any of these extras furnished at the request of Mr. Alvey himself when here? A. Yes.

"Q. And these conversations you had, were they contemporaneous at the time he ordered these extras? A. That was previous to and during the ordering of these extras.

"Q. Now did Mr. Alvey tell you anything of the reasons that they were here operating under the name of Benj. H. Alvey Corporation in this instance? A. Mr. Alvey told me that he was well known throughout the whole country as a man who had invented and installed numerous loading and conveying machines throughout the whole country, and that his reputation along this line of work was well known; that he had made numerous inventions, manufactured numerous machines and installed same, lowering handling costs in several plants, naming particular places that were handling package freight, bottling works and the handling of small commodities."

When the work was completed a letter was written to the McKelvey Construction Company asking for payment of the balance due. In reply to this letter the McKelvey Construction Company, through its president, advised plaintiff that it was in no way re-

sponsible for the obligations of the Alvey Corporation, that it did at times loan this Corporation, and that such Corporation assigned to it the proceeds of the contract with the United Fruit Company. The letter further advised plaintiff that the Alvey Corporation was still indebted to the McKelvey Company for monies advanced, and that it was in the same position that plaintiff was.

The evidence also disclosed that McKelvey had given Haley the money with which to commence the work. There is no argument or question as to the correctness of the amount in dispute.

At the close of the case the court announced its intention of sustaining a demurrer to the plaintiff's evidence, and plaintiff took an involuntary nonsuit with leave to move to set the same aside. The motion to set aside the involuntary nonsuit was overruled, and plaintiff has appealed.

The sole question raised here on appeal is the propriety of the court's action in sustaining plaintiff's demurrer to the evidence. The contention of the plaintiff is that it was entitled to have its cause submitted to the jury upon the theory that the McKelvey Construction Company was liable as the undisclosed principal. The defendant's theory is that the plaintiff had full knowledge as to who the principal was, and chose to hold the agent, and, therefore, they cannot hold the principal liable. Respondent also contends that this appears as a matter of law.

There is a motion filed here to dismiss this appeal on the ground that plaintiff has not complied with the rules of this court, in that its brief does not set out any specific assignments of error. This motion was taken with the case. However, as the sole point made by plaintiff on appeal is that the court erred in sustaining plaintiff's demurrer, there is only one point raised here, and as this is properly made under plaintiff's ''Points and Authorities'' this motion to dismiss is overruled. [Amick v. Empire Trust Co. (Mo.), 296 S. W. 798.]

The question, therefore, presented on appeal, is whether or not it was a question for the jury as to the undisclosed principal, or whether, according to respondent's theory, the principal was disclosed and plaintiff sought to hold the agent, and is, therefore, barred from recovery.

The plaintiff company extended credit to the Alvey Corporation, but it contends that the evidence does not disclose the relationship of principal and agent at the time of the signing of the contract, and that plaintiff did not have full and actual knowledge of the situation of the parties, and the facts of the agency, and, therefore, it was a question for the jury as to defendant's liability. There must, of course, be knowledge on the part of the vendor of the relationship of the parties and their interest in the matter, to exonerate the principal

by giving credit to the agent, but if such knowledge is obtained, and the vendor chooses to give credit to the agent as his debtor, he discharges the liability of the principal.

An examination of this record leads us to the conclusion that the trial court did not err in refusing to set aside the involuntary nonsuit. We think the evidence discloses a situation where the plaintiff had complete knowledge that the Alvey Corporation was merely a part of, and representing the McKelvey Construction Company. The testimony of the representative of the plaintiff company shows that before it proceeded with a job it always referred the matter to the auditor or secretary. He also testified that he had received the information from Mr. Haley, and with a complete knowledge of all the facts, plaintiff entered into a constract and extended credit to the Alvey Corporation, and under such circumstances, it cannot hold the McKelvey Construction Company as undisclosed principal. This is unquestionably the law, and, therefore, there was no error in the trial court's action. The judgment of the circuit court is accordingly affirmed.

*Becker, J.,* concurs; *Haid, P. J.,* not sitting.