RODGERS, Justice.
This is a suit for damages growing out of an alleged negligent failure of the Bank of Greenwood to collect past-due payments on securities pledged as collateral to the appellee bank by appellants, Perry L. and Mabel P. Koelling.
This appeal to this Court came from a final decree of the Chancery Court of Le-flore County, Mississippi, rendered in favor of appellee, the Bank of Greenwood, and against the original complainants, Perry L. and Mabel P. Koelling.
The original bill charged that prior to June 25, 1962, the complainants owned a building in the city of Greenwood and certain machinery and equipment necessary for the operation of the business of bottling and distributing soft drinks; that they owned franchises to make various soft drinks and owned trucks and equipment to deliver and distribute the merchandise to customers. They alleged that on the 25th of June 1962 they sold the bottling company, including good will, to one Carl H. Langschmidt for the sum of $55,000. They also leased the building in which the business was located to the purchaser, for a period of five years, for the sum of $400 per month. It is alleged that the purchaser assigned his rights in the business to Double Cola Bottling Co., Inc., and that this corporation operated the business until September 1964 and thereafter the equipment was used by Mrs. Carl H. Lang-schmidt.
In the meantime, on February 15, 1963, it is said, the complainants, Mr. and Mrs. Koelling, borrowed $39,000 from the Bank of Greenwood and executed their note for this sum. The note was secured by a trust deed upon the building in which the bottling company was located. The complainants also assigned to the bank, as additional security, the sales agreement, promissory note and chattel deed of trust upon the bottling equipment and trucks given to them by Carl H. Langschmidt. The original bill further charges that on March 30, 1694, the complainants were advised that Mr. Langschmidt would be unable to pay the $1,500 to become due April 1, 1964, and that complainants advised the bank of that fact, but that the bank took no steps to collect the money due on the note and trust deed pledged to the bank as collateral for the loan made to the complainants; that thereafter, other instalments became due and were unpaid, and that the bank made no effort to collect the money due on the pledged deed of trust. It is further alleged that Langschmidt had permitted the bottling business to deteriorate and had permitted taxes and other obligations to become due and unpaid; that complainants advised the bank of the situation; that the bank took no steps to protect the pledge belonging to the complainants. Finally, it is said that the Bank of Greenwood submitted a proposition whereby Carl Lang-schmidt and Double Cola Bottling Co., Inc., agreed to convey the personal property described in the chattel mortgage pledge held by the bank to complainants, upon release of all indebtedness due complainants by Carl H. Langschmidt. Complainants accepted this offer. They also sold the bottling company building and paid their indebtedness to the Bank of Greenwood in the sum of $30,457, and paid $1,716.97 delinquent taxes. They alleged that they sold all of the personal property described in the trust deed previously pledged to the bank and, after expenses, they lost $9,758.- *373 46; that the complainants sustained a loss of $22,415.51; that subtracting this sum from $32,173.97 paid the bank and for taxes, the complainants lost $9,758.46 because of the negligent failure of the bank to foreclose the chattel trust deed and protect the pledge held by the bank.
The defendant, Bank of Greenwood, answered the original bill and admitted the various transactions alleged in the bill, but denied that the bank received the pledged chattel mortgage as a trustee of the complainants’ pledge and denied that it was the duty of the bank to collect the pledged obligation. It denied that it was the bank’s duty to use due diligence to see that the property covered by the chattel deed of trust was not allowed to depreciate in value due to lack of care; it denied that it was required to use diligence in collecting the note pledged to the bank or that it was the bank’s duty to see that the pledged obligation did not deteriorate in value and denied that the bank owed any duty to complainants and denied it violated any duty owed complainants.
The bank denied that it knew the pledged property was depreciating in value. The bank denied that it was requested to take any steps to collect the indebtedness due by Carl H. Langschmidt. It denied that the property pledged to the bank could have been sold for the amount due by complainants. The bank alleges that at a meeting in July 1964 the complainants urged Lang-schmidt to continue to operate the business, stating that it was agreeable for Lang-schmidt to “go ahead and try to work out his business.” The bank denied that it permitted Langschmidt to default in the payment of the pledge so as to receive payment on other indebtedness due the Bank of Greenwood.
The bank affirmatively alleged the indebtedness due the bank from the complainants, Mr. and Mrs. Koelling, and alleged that the rent was paid to the Koell-ings on the bottling building although the note was pledged to the bank. The bank admitted it wrote to the Koellings making the proposition that Langschmidt would convey the property back to them; that the bank received and distributed the money paid the Koellings for the bottling company building. The bank alleges that the voluntary payment of the debt due to the bank and circumstances surrounding the settlement represented a ratification and acceptance of the dealings of the bank with the Koellings and that they are now es-topped to assert any claim arising out of the transaction.
The testimony reveals that after the loan was made to Mr. and Mrs. Koelling, and the note and trust deed hypothecated to the bank, Mr. Langschmidt paid the payments due until April 1, 1964. The monthly rentals on the building, however, were paid to the Koellings until December 4, 1964, when $400 was paid to the bank. The record also shows that prior to the date of the Koellings’ note, the bank had lent $4,000 to Carl H. Langschmidt. Only the interest had been paid on the note at the date of the Koelling transaction. Thereafter, however, Mr. Langschmidt paid this note down to $600. A further loan was advanced to Mr. Langschmidt on July 18 and this loan was repaid July 25, 1963.
The record also reveals that the soft drinks manufactured by Mr. Langschmidt were purchased largely by colored people. In order to meet competition, it was necessary to purchase 16-ounce bottles and acquire a new washer capable of washing these bottles, and for that reason, the bank advanced the additional loan of $1,600.
When Langschmidt advised the Koellings that he would be unable to meet the April 1, 1964, payment, Mrs. Perry Koelling and her attorney had several meetings with the officers of the bank. Mr. Langschmidt was present at some of these meetings. One of the attorneys for the plaintiffs testified that he requested the bank to “foreclose on the Langschmidt collateral” and that Mr. Miller, the Executive Vice President of *374 the bank, refused to foreclose the pledged trust deed; however, no letter was written to the bank. Mr. Miller testified positively that no demand was made on the bank to foreclose the chattel trust deed. The testimony shows that after the bottling business was purchased by Mr. Langschmidt, racial unrest and racial tension developed in the Greenwood area so that the overall purchase of soft drinks by colored persons was affected so as to reduce the total sales and, in effect, establish a boycott of the purchase of goods in this area.
The record further shows that Mr. Lang-schmidt borrowed money from the bank to purchase sugar and that the bank knew his financial condition. Mr. Miller testified that he renewed the note to “keep the place open,” to protect the Koellings, and to keep Langschmidt making money so he could pay off the indebtedness.
The chancellor, after hearing the testimony and argument of counsel, determined that (1) the complainants did not make demand on the bank to foreclose the pledged chattel trust deed; (2) that the Bank of Greenwood was not negligent, nor did it act in bad faith, by its method of handling the pledged collateral; and for those reasons, a decree was entered in favor of the defendant bank dismissing the complainants’ original bill.
The complainants have appealed and now contend that the chancery court committed reversible error in dismissing complainants’ original bill, and in holding that (1) the appellee bank did not use ordinary care and diligence in dealing with the pledged promissory note and chattel trust deed; (2) that the chancery court erred in holding that the bank did not delay foreclosure in order to collect a note due the bank.
The general rule is expressed by the textwriter in 41 Am.Jur. Pledge and Collateral Security § 72 (1942), as follows, at pages 633-635:
“§ 72. Duties and Liabilities of Pledgee. — As a general rule, in the absence of any agreement to the contrary, the holder of collateral security is bound to exercise ordinary diligence to preserve the validity and pecuniary value thereof, and, if by negligence, wrongful act, or omission on his part loss has been sustained, it must be borne by him. Thus, i f the person with whom negotiable paper is left as collateral security neglects to make presentment thereof when the instrument is due, or fails to give notice to bind the parties to it, or does not use due diligence in making the collection, so that by reason of his neglect the paper becomes worthless, it is generally held that he will be liable for the loss to the pledgeor. The pledgee has in some instances been held liable for the face value of the collateral. The weight of authority, however, is to the effect that the pledgee of commercial paper, by failing to make proper demand and give notice of nonpayment to the pledgeor, makes himself liable to the pledgeor only for such loss as was thereby occasioned the pledgeor. He is further required to bring timely suit, and to enforce a judgment which he has obtained. The holder of collateral must at least exercise such diligence in the collection thereof that the obligation will not be lost through the operation of the statute of limitations; * * * One holding as collateral security commercial paper which is secured by mortgage on chattels is liable to his debtor for permitting the lien of the mortgage to expire and the obligors upon the paper to become insolvent, without taking any steps to enforce payment of it, so that the security is entirely lost. * * * ”
See also: 72 C.J.S. Pledges § 21b (1951).
This Court held in Hibernia Bank & Trust Co. v. Turner, 156 Miss. 842, 127 So. 291 (1930), that the pledgee of property held as security must deal with the pledge *375 so as not to destroy its value. We said in Love v. Rogers, 168 Miss. 1, 150 So. 815 (1933), that a pledgee held pledged commercial paper as trustee for the pledgor, In Anthony Bros. v. Bank of Sebastopol, 151 Miss. 373, 118 So. 198 (1928), this Court said:
“It is settled law that a bank receiving a note, draft, or other commercial paper is bound to use reasonable diligence and skill in handling the paper, and that it is liable for negligence in failing to handle the same in a proper manner. * * * ” (118 So. at 199)
As early as 1843 this Court held in Steger v. Bush, Smedes & M.Ch. 172, that one who accepts from his debtor the note of a third person as collateral security for the debt, is bound to use due diligence in collecting it; and if it is lost, by any delay of his, he becomes responsible for the amount of the note.
It is, therefore, apparent from the authorities by our Court that we have aligned ourselves with the general rule outlined by the textwriters above mentioned. The issue here, however, is not whether or not we agree with the rule, but rather whether or not the facts presented to the chancery court bring this case within the foregoing rule of liability.
It will be noted from the allegations of the original bill that this cause of action is based upon negligence; that is to say, the bank did not act with due care for the rights of the complainants.
 It will be noted that “the holder of collateral security is bound to exercise ordinary diligence to preserve the validity and pecuniary value of the pledged collateral, and, if by negligence, wrongful act or omission, on his part loss has been sustained, it must be borne by him.” But, what is meant by the phrases “ordinary diligence,” and “negligence, wrongful act or omission”? Of course, if the pledgee contracts to sell a pledge, he is- bound by his contract to the pledgor, but is the pledgor always required to sell the pledge or foreclose a chattel mortgage as soon as a payment is past-due?
The textwriter in Jones on Collateral Securities, 3rd Ed. § 700 (1912), at pages 828, 829, has this to say on this subject:
“What constitutes negligence in the collection of such collateral security is a question of fact to be determined according to the circumstances of the case. Greater diligence may be required in case the creditor is aware that the maker of the collateral paper is in embarrassed circumstances, than would be required in case the maker were supposed to be wholly responsible. A delay to collect which would amount to negligence in the former case, might not be so in the latter. Diligence which is reasonable under the circumstances of the case, and not extraordinary diligence, is what is required. Ordinary care and diligence must be used, and the circumstances of the case are to be considered in determining the extent of this responsibility. This responsibility is not determined by the strict rules of commercial law applicable to negotiable paper; but rather by the principles of the general law of agency.
“ * * *
“A creditor holding negotiable paper as collateral security is required to use a different kind of diligence from that required of one holding merchandise or other corporeal property; and yet the diligence in each case is only such as is appropriate to the nature of the property. If the property be precious stones, safe keeping is all that is required. If it be grain, it must be properly stored and protected from all injury. The diligence required of the *376 holder of promissory notes or other securities for the payment of money has reference to the danger that the parties liable on them may become insolvent and unable to pay. A prudent business man will collect such obligations when they are due, or will endeavor to enforce them by suit; if, therefore, a creditor neglects to enforce the collection of such securities held in pledge, and delays till the parties liable become insolvent, he is as much guilty of neglect as if he had suffered grain held in pledge to be destroyed by dampness or heat for lack of proper storage.”
As a general rule, a pledgee is not always required to sell the collateral security. The textwriter in 41 Am.Jur. Pledge and Collateral Security § 82 (1942), points out this rule as follows at page 642:
“A pledgee, although generally entitled to do so, is not ordinarily bound on the pledgeor’s default to sell the thing pledged, but may sell or not, at his option. If he does not see. fit to sell, he may continue to hold the subject of the pledge as security for the debt. In the absence of any agreement requiring the pledgee of property to sell it at the maturity of the debt, he cannot be held liable for a depreciation in the value of the property occurring after the maturity of the debt secured by the pledge. The pledgeor, having the right of redemption, must redeem and sell the pledged property himself if he wishes to avoid loss by depreciation.
“The contract of pledge may make it the duty of the pledgee to sell within a specified time, and his failure to do so is then such breach of duty as will render him answerable to the pledgeor. In the absence of such contract, however, the prevailing view is that the pledgeor cannot make it the duty of the pledgee to sell merely by requesting or directing him to do so. * * * ”
This Court adopted this rule in Hudson v. Belzoni Equipment Co., 203 Miss. 212, 33 So.2d 796 (1948), in which we said:
" * * * A pledgor has the right to exact a strict performance of the contract. Upon default in payment of the obligation the title to the pledged property does not vest in the pledgee but remains in the pledgor, subject to the trusteeship. Where the pledgee is not required to sell the collateral he is not compelled to do so. * * * ” (33 So.2d at 800)
The question as to whether or not the bank, acting as a reasonably prudent pledgee, should have foreclosed the chattel mortgage after the first payment became due and unpaid was a question of fact to be determined by the chancellor. The burden of proving facts necessary to establish negligence, wrongful act or omission on the part of the bank was cast upon the complainants. 41 Am.Jur. Pledge and Collateral Security § 72 (1942). The chancellor was of the opinion that the defendant bank was not negligent and that it acted in good faith. We are unable to say that the chancellor was manifestly incorrect as to the facts.
The case of Amick v. Empire Trust Company, 317 Mo. 157, 296 S.W. 798, 53 A.L.R. 1064 (1927), is a case almost identical with the instant case. In that case an action was brought by a pledgor for the alleged negligence of a pledgee in failing to make a reasonable effort to collect a certain collateral note and to enforce the chattel deed securing payment of the collateral note. The chattel mortgage was upon a large amount of machinery. It is alleged that the pledgee permitted the signers of the note to become insolvent and the security to become wasted. The testimony showed that the collateral was good security at the time it was given. The vice president of the pledgee trust company-testified that he had not been requested to collect the collateral note and gave his reason for non action, that defendant had *377 been informed by its attorney that defendant could not do anything inasmuch as Bass had filed an answer to the suit (another suit) of Empire Trust Company upon the principal note of Bass setting up a plea of payment. The trial court granted a directed verdict for the defendant, Empire Trust Company. On appeal, the Supreme Court quoted from 31 Cyc. 385 as follows:
“ * * * ‘In an action against the pledgee for failure to enforce collateral, it is not enough to show that it has not been collected; but it must appear that the pledgee has been negligent, and that loss has resulted to the pledgor from such negligence. Upon an action by the pledgor against the pledgee for failure to exercise due diligence in the enforcement of collateral, or where the pledgor sets up such lack of diligence as a defense to a suit on the principal obligation, the creditor must account for the collaterals, as in the case of their loss, but having done so, the mere fact that they have not been collected is not even prima facie evidence of negligence, and the burden is on the pledgor to prove negligence and damage.’ ” (296 S.W. at 802, 53 A.L.R. at 1070, 1071)
The Amick case is very persuasive on the issue now before this Court because we are convinced that the bank acted so as to bring all parties together for the good of all. Moreover, there was no reason shown that would indicate to the officers of the bank that the civil rights boycott would continue for such a length of time so as to cripple the bottling business. We are of the opinion that the testimony does not show that the bank was negligent in the handling of the collateral entrusted to its care. The decree of the chancery court is, therefore, affirmed.
Affirmed.
GILLESPIE, P. J„ and PATTERSON, SMITH and ROBERTSON, JJ., concur.