25006. JOHNSON *v.* FIRST NATIONAL BANK OF SHELLMAN.

DECIDED MARCH 19, 1936.

*George H. Perry,* for plaintiff in error. *James W. Harris,* contra.

STEPHENS, J. The First National Bank of Shellman sued Johnson on two promissory notes, alleging that he was indebted to it in the sum of $1029.38 as principal, besides certain interest, and ten per cent. attorney's fees. Copies of the notes and of the notice of intention to claim attorney's fees were attached. The plaintiff alleged that payment of the balance due on the notes had been demanded of the defendant, who refused to pay the same. One of the notes was for $261.70, dated January 16, 1931, and due on October 5, 1931. The other note was for $1690.99, dated November 1, 1930. This note was as follows, omitting the waiver of homestead: "On demand after date, I promise to pay to the order of First National Bank of Shellman at the office of the First Na-

tional Bank in the City of Shellman, Georgia, the sum of sixteen hundred and 99/100 dollars, for value received, with interest from date at 8 per cent. per annum until paid, with all costs of collection, including ten per cent. attorney's fees, if collected by law or through an attorney at law; and have pledged to said payee, as collateral security 26 bales cotton stored in Peoples Warehouse, Shellman, Ga., 7 bales cotton stored in Farmers Warehouse, Shellman, Ga., as shown by receipts which have been endorsed by me. Insured, with loss-payable clause attached in favor of bank. · And do hereby agree that whenever the total market value of the cotton represented by said warehouse receipt held as collateral security for this indebtedness of the undersigned to said holder shall be insufficient to cover the same, with ten per cent. margin added thereto, to deposit with said holder immediately, upon demand, additional security to be approved by said holder, sufficient to cover the said amount and margin—the said additional security to be a collateral security to the same extent as the securities hereby pledged; and in default of depositing the additional security, as above agreed, this note shall become instantly due and payable, precisely as though it had actually matured. Upon default of payment when due, said holder is hereby authorized to sell, at any time or times thereafter, and without any previous demand or notice, the whole or any part of the said warehouse receipts or the cotton they represent, at either public or private sale, and to apply the proceeds thereof to the payment of such indebtedness or liability, with interest and costs, including ten per cent. attorney's fees, the undersigned remaining responsible for any deficiency. At any sale made in accordance with the above agreement said holder is hereby authorized to become the purchaser and absolute owner of the securities sold, free of all trusts and claims. I also agree to keep the above-described cotton fully insured at its market value against loss or damage by fire, in a company acceptable to and for the benefit of the holder of this note, and to pay the cost of said insurance until this note is paid." There was an entry on the note in these terms: "Paid June 2, 1933, by sale of 37 B/C., $1272.58." The notice of intention to claim attorney's fees described the larger note as "Note for $1690.99, dated November 1, 1930, due on demand, less credit thereon from the sale of 37 bales of cotton on June 2, 1933, $1272.58."

The answer filed by the defendant denied the indebtedness, and denied that demand for payment had been made on him; and alleged in paragraph 3 of the plea as follows: "He admits the execution of the notes sued upon, but says that he is not indebted to plaintiff in any sum, because of the following facts: Defendant on the date of the execution of said notes delivered to plaintiff thirty-seven bales of cotton stored in the warehouse at Shellman, Georgia, and the warehouse receipts therefor, as collateral security for the payment of said notes, the said cotton then being of the fair market value a sum considerably in excess of the full amount due on said notes. That shortly thereafter the price of cotton begun to decline, and defendant instructed plaintiff to sell said cotton when and in the event the market price of said cotton was reduced to the amount due on said notes, and to apply the proceeds of said sale in settlement and payment of said notes. That plaintiff, through its lawful agent and president, H. O. Crittenden, then agreed and contracted with defendant to sell said cotton when the market price thereof had been reduced to the full amount due on said notes. That plaintiff wilfully and negligently ignored said agreement, and did not sell said cotton as so directed and agreed, but held the same in a declining market, and eventually sold the same at a loss that is now sued on as an alleged balance due on said note, to the loss and damage of defendant in said sum. Wherefore, defendant prays that he may recoup his damages as aforesaid, and that he may have judgment against plaintiff therefor." To this answer the plaintiff demurred on the ground that it set forth no legal defense, and demurred specially to paragraph 3 because the same is an attempt to "vary the definite and certain terms of the contract sued upon with special reference to defendant's complaint as to the sale of the cotton held as collateral." Thereupon the defendant filed an amendment the allegations of which were substantially as follows: That the note of $1690.99 was payable on demand, and was not by its terms due and payable until the plaintiff had made a formal demand on the defendant for payment; that the plaintiff, on June 2, 1933, sold or otherwise disposed of and converted to its use the cotton described in the collateral note, without making any demand on the defendant for the payment, and before the maturity of the note; that the pretended sale was not fairly conducted and made to the highest

bidder; that the plaintiff has not made any bona fide sale of the cotton, but has applied same to its own use, etc., that the plaintiff knew that the defendant was without means other than the pledged cotton, and, realizing his inability otherwise to pay off the note, the defendant very shortly after the execution of the note, the exact date he does not now recall, made the special agreement set forth in his original answer, whereby the plaintiff agreed and covenanted with the defendant not to hold the cotton for such length of time as would occasion any financial loss to the defendant, but that it would sell the cotton if and when the market value was reduced to the full amount due on the note; that at that time the market price of the cotton was considerably in excess of the full amount due on the note, and the defendant then offered to sell the cotton for the purpose of paying the note, but the plaintiff denied him permission to do so; that the market value of cotton was then declining, and the defendant, being apprehensive of financial loss, requested the plaintiff to sell the cotton and apply the proceeds in payment of the note, which also the plaintiff failed to do; that the defendant relied upon the said subsequent oral representations and agreement of the plaintiff, as above set forth, founded upon a legal consideration, that it would not hold the cotton but would sell it as agreed; that the plaintiff in bad faith and in violation of its supplemental agreement, and not in the exercise of ordinary care and diligence, held the cotton from November 1, 1930, until June 2, 1933, on a constantly-declining cotton market, when it disposed of the same to the loss of the defendant, etc.; that the plaintiff applied a considerable portion of the alleged proceeds from the sale of the cotton to other purported obligations of the defendant not embraced in the collateral note, as follows: for damage to cotton while in storage $63.07, for storage and drayage $156.25, for insurance $79.07, which said sums should in any event be credited on the collateral note.

On the filing of the foregoing amendment, the plaintiff, without filing a new demurrer, renewed its previous demurrer, which was sustained, and an order was granted striking paragraph 3 of the original answer and all of the amendment. To this ruling the defendant filed exceptions pendente lite. At a subsequent term of the court, the plaintiff, by permission of the court, took a verdict and judgment for the full amounts sued for. The bill of excep-

tions assigns error on the exceptions pendente lite and on the final judgment.

■ The pledgor of property has no right to require the pledgee to sell the property. Though the title to the property is in the pledgor, he parts with the power of disposition when he makes the pledge. When the pledgor requests the pledgee to sell, and the pledgee refuses, the loss from a decline in value of the pledged property thereafter occurring can not be charged against the pledgee, but falls on the pledgor. This has been held specifically with reference to cotton. *First National Bank* v. *Hattaway,* 172 *Ga.* 731 (158 S. E. 565, 77 A. L. R. 375). It is alleged that the plaintiff and the defendant agreed, for a consideration, that the cotton would be sold when the market price declined to the point where the value of the cotton would not exceed the amount of the debt. The plaintiff demurred to the plea as an effort to change the written contract. It was provided in the contract that the defendant should keep the cotton margined to the amount of ten per cent.; and that if he failed to furnish additional collateral on request, the note should immediately become due. Instead, then, of going through the ceremony of demanding additional collateral and failure to furnish it, why could not the parties agree that the cotton be sold as soon as the margin was exhausted? Under the written contract, the bank would not, on request, be compelled to sell; but if it agreed to do so, it should be held to its agreement. The plea does not show what was the consideration for the alleged agreement. It merely alleged that the bank through its president "contracted with" him, that the plaintiff "agreed and covenanted" with him, and that he relied upon the agreement "founded upon a legal consideration." But there was no special demurrer going to this. The special demurrer simply asserts that the plea is an attempt to vary the contract. It does not make the point that such a variation would have to be in writing. Written contracts are frequently varied by subsequent oral agreements. There is nothing sacred in this kind of contract which protects it from alteration by consent of the parties.

■ The pawnee is bound for ordinary care and diligence. Code of 1933, § 12-605. The answer raised the question as to the diligence of the bank. This is a question of fact properly determinable by a jury. The long delay in selling the cotton while

the price was constantly declining, the refusal of the defendant's request to sell, and his warning that the security was depreciating were facts which could be considered in determining whether the bank used ordinary care in handling the collateral.

■ Paragraph 5 of the amendment alleges that certain items of expense were unlawfully paid by the bank. Although this claim was not specially demurred to, it is not maintainable, since the Code of 1933, § 12-607, provides that the pawner must pay all necessary expenses and repairs upon the property.

The court erred in sustaining the plaintiff's demurrer to the amended answer.

*Judgment reversed. Jenkins, P. J., and Sutton, J., concur.*