W. F. SHEETZ & CO. *v.* COMMONWEALTH COMMERCIAL
STATE BANK.

1. CORPORATIONS—POWERS OF PRESIDENT—PLEDGES.

   In controversy involving power of president of a corporation to
   execute a pledge agreement, whether or not it was executed on
   purported date of execution or at some later date *held*, unim-
   portant where powers granted him as president during period
   in question were not altered in any particular.

2. SAME—PLEDGES—AUTHORITY OF PRESIDENT—FINDING OF COURT.

   In suit to declare void the pledge and sale of stock which had
   been pledged with bank upon consolidation of loans of plain-
   tiff corporation and its president who owned 40 per cent. of its
   stock, finding of trial court that plaintiff's board of directors
   had given necessary authorization to president to execute the
   pledge although the term ''pledge'' or ''collateral'' was not
   explicitly mentioned in resolutions authorizing the plan of re-
   financing *held*, supported by evidence.

3. SAME—PLEDGES—FORM OF NOTE.

   In suit to declare void the pledge and sale of stock which had
   been pledged with bank upon consolidation of loans of plain-
   tiff corporation and its president who owned 40 per cent. of
   its stock, claim that stock was left with bank merely as evi-
   dence of plaintiff's good faith that it would not sell it *held*,
   untenable under testimony showing, among other things, that
   form of bank note was one used for making secured loans and
   was referred to as a collateral note and contained waiver of
   notice of sale (2 Comp. Laws 1929, § 9561).

4. SAME—PLEDGES—AUTHORITY OF PRESIDENT—WAIVER OF NOTICE
   OF SALE.

   Authority of president and director of ''one-man'' corporation
   to pledge stock owned by it as collateral to bank loan in which
   loans to him and corporation were consolidated into loan to it
   *held*, under circumstances showing that he managed corporate
   affairs without consulting other directors, to carry authority
   to accomplish the same in any manner usual and necessary,

including authority to waive notice of sale of stock as provided by statute (2 Comp. Laws 1929, § 9561).

5. SAME—PLEDGES—SALE OF STOCK WITHOUT NOTICE—WAIVER.

In corporation's suit to declare void the pledge and sale of stock after its default in payment of loan secured thereby, claim that defendant bank waived its right to sell stock without notice by conversations between the cashier and plaintiff's president *held,* without merit (2 Comp. Laws 1929, § 9561).

6. PLEDGES—SALE OF STOCK SECURING LOAN—DEGREE OF CARE REQUIRED.

Bank which accepted offer of $90,000 in cash for stock which had been pledged to secure loan written off as a bad debt, rather than another alleged offer of $100,000 for such stock if it ever came back to the bank providing such offeror could raise the money *held,* to have exercised degree of care and diligence required under the circumstances where second offeror for some time had known stock was for sale but never exhibited inclination to purchase it (2 Comp. Laws 1929, § 9561).

Appeal from Wayne; Campbell (Allan), J. Submitted October 5, 1937. (Docket No. 16, Calendar No. 39,593.) Decided November 10, 1937.

Bill by W. F. Sheetz & Company, a Michigan corporation, against Commonwealth Commercial State Bank, R. C. Mahon Company, American Industries Securities Company, Michigan corporations, American Industries Corporation, a Maryland corporation, and H. Lester Jeup to set aside the sale of stock, for an accounting, an injunction and other relief. Cross-bill by American Industries Corporation against plaintiff and defendants R. C. Mahon Company and defendant bank to clear title to stock and for transfer of stock and other relief. Cross-bill by defendant bank against plaintiff for an accounting and a money decree. Bill dismissed and decree for defendants bank and American Industries Corporation. Plaintiff appeals. Affirmed.

*Wilkinson, Lowther & O'Connell,* for plaintiff.

*Charles F. Meyler,* for defendant bank.

*Armstrong, Weadock, Essery & Helm (Joseph J. Marshall,* of counsel), for defendant American Industries Corporation.

CHANDLER, J. The plaintiff company was incorporated in 1924 with three stockholders, including Mr. W. F. Sheetz, who also comprised the board of directors. W. F. Sheetz was president and treasurer and owned 40 per cent. of the capital stock while the remaining two stockholders owned the balance of the stock in equal shares.

On January 14, 1931, plaintiff was indebted to the defendant bank in the sum of $16,954.15, including interest, and W. F. Sheetz, who was also a director of said bank, was personally indebted thereto in the amount of $75,647.69, which was secured by 11,840 shares of the common stock of the R. C. Mahon company. Prior to this date both W. F. Sheetz and plaintiff had become financially embarrassed and were unable to meet their obligations as they became due and the bank examiners had expressed their dissatisfaction with the collateral which was posted as security for the obligation of Mr. Sheetz. To alleviate the situation a plan was proposed by W. F. Sheetz whereby his indebtedness and that of plaintiff were to be consolidated in a note for $100,000 to be secured by 15,000 shares of R. C. Mahon Company stock. This plan was submitted to and discussed and approved by the directors of plaintiff on January 12, 1931, the same having been reduced to writing and appearing as follows:

"W. F. Sheetz proposes to turn over to the company 15,000 shares of R. C. Mahon common stock

which now has a book value of $12 per share, for common stock of the company as follows: 15,000 shares at $10—$150,000, less indebtedness of W. F. Sheetz to C. C. State Bank, $74,200; $75,800. Taking, therefore, 7,580 shares of the W. F. Sheetz & Company common stock.

"In addition thereto, it is proposed to accept stock in the company for $10,000 of the money due from the company, leaving a balance due from the company of $4,532.04, which he will later take in in cash or stock for part, whichever can be worked out, without injuring the company.

"It is proposed to consolidate the personal loan of W. F. Sheetz, amounting to $74,200, and the $16,700, which the company owes to the C. C. State Bank, borrow an additional $9,100, from this bank, making a total loan of $100,000, which they have approved, and secure them with the 15,000 shares of R. C. Mahon Company common stock.

"W. F. Sheetz to assign to the company $50,000, of principal amount of life insurance, as beneficiary, which he now holds on his life, and buy another $50,000, of term insurance, for the benefit of the company, and assign the entire $100,000 of insurance to the C. C. State Bank as additional security for the $100,000 loan, the company to use this additional $9,100 for interest and life insurance premiums.

"W. F. Sheetz to subscribe for an additional amount of stock to be determined, and with the proceeds of the same, the company is to liquidate the bank loans."

In accordance with the plan and on January 14, 1931, W. F. Sheetz and Company, by its president, W. F. Sheetz, executed its note to the bank in the amount of $100,000 in payment of the prior indebtedness of himself and the plaintiff. The interest was prepaid for a period of three months and the remaining proceeds of $5,898.16 were held by the bank

in the form of a cashier's check and used to pay interest on the note and premiums on the insurance policy as they became due. The R. C. Mahon Company stock, a portion of which had been previously held by the bank as security for the loan of W. F. Sheetz, was transferred to plaintiff and delivered to the bank with assignments executed by Sheetz as president. In 1932 new assignments in blank were executed and delivered to the bank upon its request. The bank also holds a collateral pledge agreement, waiving notice of sale, covering the stock in question which is dated the same day as the collateral note. The date of the execution of the pledge agreement is disputed, it being claimed by plaintiff that the same was executed in blank in 1932 at the time of the preparation of the blank assignments of the stock. However, it was demonstrated that the signature on the agreement was written over the date thereof which was typewritten as evidence that the same was actually executed on January 14, 1931, the date indicated therein.

The note was renewed from time to time as it became due but was never paid. On February 16, 1934, Mr. Sheetz was advised by the bank that it could not continue to renew the note and that it had become necessary to charge off the obligation as the bank examiners had refused to permit the bank to carry it longer. Thereafter the bank negotiated for a sale or exchange of the stock and had some discussion relative thereto with Mr. R. C. Mahon, president of the R. C. Mahon Company but the transactions discussed were never completed.

In February, 1936, the bank received an offer of $90,000 for the stock from the defendant American Industries Corporation, which was accepted. Upon attempted delivery of the stock it was discovered that the bank did not have a resolution of the plain-

tiff's board of directors authorizing W. F. Sheetz to execute the assignments. The bank therefore agreed with the proposed purchaser that it would return the check given in payment of the stock if it was unable to secure evidence of the authority of Mr. Sheetz. Believing that a transfer could be more readily obtained if Mr. R. C. Mahon was unaware of the sale, the bank sought to have the stock transferred to its name, contemplating thereafter an assignment in blank to the purchaser. When the stock was presented to the Mahon company for transfer, the same was refused for the reason that there was no authority shown for W. F. Sheetz to execute the assignments. It was at this point that R. C. Mahon learned of the sale to the American Industries Corporation. He then discussed the situation with the bank and claims he agreed to give $100,000 for the stock, payment to be made later in the week. The American Industries Corporation in the meantime was apprised of the offer of R. C. Mahon and thereupon proposed to give $90,000 for the stock and accept it without evidence of authority of W. F. Sheetz to execute the assignments. This proposition was accepted by the bank and the sale consummated. At the time of the sale the total indebtedness of plaintiff of some $112,000, including interest, had been charged off by the bank as a bad debt.

Plaintiff's bill prays for a decree holding the sale of the stock by the bank void and that title is in plaintiff. Also that the court determine the amount owing by plaintiff to the bank and direct said bank to deliver the stock to it upon the amount so determined being paid, and finally, that upon default of defendant to deliver the stock upon payment of the amount found to be due, the bank be decreed indebted to plaintiff in a sum equal to the difference between the amount found to be due from plaintiff and the

value of the stock.  Upon answers and cross-bills being filed and a hearing on the merits, the court entered a decree dismissing the bill and further decreed the American Industries Corporation to be the owner of the stock, ordered the R. C. Mahon Company to transfer the same without evidence of the authority of W. F. Sheetz and found plaintiff to be indebted to the bank in the sum of $23,543.98. Plaintiff appeals.

At the time of the transactions herein related, W. F. Sheetz had express authority to bind the plaintiff corporation by contract to the extent of $25,000. It is, therefore, plaintiff's position that although Sheetz was given authority to exceed this amount by execution of the $100,000 note, no authority was granted him to execute the collateral pledge agreement, and that in the absence of such authority being specifically granted by plaintiff's board of directors, none existed, and the pledge was void.  In this connection it would appear to be insignificant whether the pledge agreement was actually executed on January 14, 1931, the purported date of execution, or at some later date in 1932 as claimed by W. F. Sheetz, for during this period the powers granted him as president were not altered in any particular.

The defendant bank insists that because plaintiff was a small corporation with Sheetz owning a majority of the stock, and because the business thereof was in a large part conducted by him without any action by the board of directors, the meetings of the board being very irregular and infrequent, it must be held that the authority of Mr. Sheetz was coextensive with the business intrusted to his care, citing *Preston National Bank of Detroit* v. *George T. Smith Middlings Purifier Co.*, 84 Mich. 364; *Wilson* v. *Livingston County Mutual Fire Ins. Co.*, 259 Mich.

25; *Grossman* v. *Langer,* 269 Mich. 506.   However, without discussing this proposition, it is our opinion that the record fully supports a finding that Mr. Sheetz was expressly authorized by the board of directors to execute the questioned pledge of stock. It was admitted by Sheetz and Mr. Dawson, another of plaintiff's directors, that the plan to consolidate the loans of plaintiff and W. F. Sheetz was fully discussed at the directors' meeting held on January 12, 1931, and that the resolutions passed at that time were for the purpose of effecting the proposal.   The secretary and third director testified that the plan was not discussed but admitted on cross-examination that the copy thereof as drafted by Mr. Sheetz was on the table at the close of the meeting and was by him placed in the minute book for future reference.

It appears to be plaintiff's claim that the required authority was lacking because the resolutions adopted to carry out the plan failed to specify that the stock was to be pledged.   However, failure to mention explicitly or precisely the word "pledge," "collateral" or some similar expression or make particular reference to this portion of the plan should not defeat the pledge where, as in the instant case, it is clear from the record that it was intended by the resolution to adopt the proposal in its entirety.   We hold, therefore, that Mr. Sheetz had the necessary authority to execute the pledge.   See *Sherman* v. *Fitch,* 98 Mass. 59.

Neither can the claim made by Mr. Sheetz that the stock was left with the bank merely as evidence of plaintiff's good faith that it would not sell it be accepted.   It is not in harmony with the facts heretofore discussed and with the further fact that it was definitely established that the note executed by Sheetz was a form used by the bank in making

secured loans and referred to as a "collateral" note and Mr. Sheetz's testimony that the plan was "substantially carried out insofar as the bank is concerned."

The pledge agreement provided a waiver of notice of sale. 2 Comp. Laws 1929, § 9561. We are unimpressed with plaintiff's argument that the sale must be declared void for the reason that, assuming Mr. Sheetz had authority to make the pledge, no authorization was given to waive the provisions of the mentioned statute in so doing. In this connection it must be noted that plaintiff was a small and what might be termed "one man" corporation. The other two directors apparently took little interest in the management or conduct of the business as is demonstrated by the infrequency and irregularity of the board meetings, none having been held from September, 1928, until 1931. They were not consulted by Sheetz as to business transactions other than informal conversations which from time to time occurred, and as expressed by director Dawson, "In the conduct of the business I knew he was doing it alone." In view of these circumstances we believe that the authority to pledge the stock carried with it the authority to accomplish the same in any manner usual and necessary, including the authority to waive the notice of sale as provided by the statute.

Plaintiff claims that the bank waived its right to sell the stock without notice by conversations occurring between Mr. Sheetz and the cashier of the bank. We find no merit in this point.

The only remaining question of importance is whether the bank exercised that degree of care and diligence required of it as pledgee in disposing of the stock for $90,000 in view of the offer claimed to have been made by R. C. Mahon to pay $100,000

therefor.    The testimony as to the offer of Mr. Mahon is somewhat conflicting in that Mahon claimed he made the offer on March 3, 1936, and agreed to make payment later in that week and that thereafter in the same conversation he was informed by Mr. Parshall, cashier of the bank, of the conditional offer of the American Industries Corporation.    On the other hand, Mr. Parshall contended that Mahon stated that he would pay $100,000 for the stock if it ever came back to the bank, providing he could raise the money.

The question becomes somewhat difficult in view of the conflicting claims of the parties.    However, it must be remembered that the loan had been considered of no value as far as the bank's assets were concerned.    The total indebtedness at the time of the sale was some $112,000 and naturally the bank would hesitate to exchange a definite cash payment of $90,000 under these circumstances for the rather indefinite proposition of Mahon to make payment of $100,000 at some later date with nothing more as evidence of his good faith or ability to pay at the time stipulated.    The position of the bank becomes emphasized by reason of the fact that R. C. Mahon was acquainted with the circumstances, had had the opportunity of purchasing the stock on many prior occasions but never exhibited any inclination so to do.    After full consideration, we find that the bank exercised the required degree of care and diligence under the circumstances.

The decree is affirmed, with costs to appellees.

FEAD, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, and POTTER, JJ., concurred.