MELVINDALE STATE BANK v. ECKFELD.

1. APPEAL AND ERROR—CROSS-APPEAL—ASSUMPSIT—SET-OFF.

In action of assumpsit in which defendant claimed set-off, question of set-off is unimportant where trial judge, in holding in defendant's favor, denied judgment thereon in excess of amount claimed by plaintiff and defendant claims no cross-appeal.

2. Banks and Banking—Powers of President—Presumptions.

    The president of a bank, as executive head, is presumed to have power to act for the bank in its ordinary contracts and agreements and his act pertaining to the general business will, in the absence of proof to the contrary, be presumed to have been properly authorized.

3. Pledges—Duty of Pledgee—Negligence.

    A pledgee has a duty to use at least ordinary care in the preservation of the security pledged and in the protection of the pledgor's interest therein.

4. Banks and Banking—Pledges—Sale of Collateral Upon Borrower's Demand—Negligence.

    Failure of bank, as pledgee of stock, given it as collateral security for defendant's note, to sell such stock upon latter's request at a time when it would have more than satisfied his entire liability on note secured thereby and falsely representing such sale had been accomplished *held*, such negligence as to render bank liable for loss arising from depreciation in the value of the stock pledged.

5. Bills and Notes—Purchaser After Maturity.

    Purchaser of note after maturity is in no better position than its assignor.

Appeal from Oakland; Gillespie (Glenn C.), J. Submitted January 19, 1938. (Docket No. 56, Calendar No. 37,362.) Decided February 24, 1938.

Assumpsit by Melvindale State Bank against Henry F. Eckfeld on a promissory note. Plea of setoff by defendant. Judgment for defendant. Plaintiff appeals. Affirmed.

*R. S. Woodliff* (*M. M. Larmonth*, of counsel), for plaintiff.

*Pelton & McGee*, for defendant.

Butzel, J. In 1930, defendant, who had been a branch manager of the American State Bank of De-

troit, in which he held 15 shares of stock, was asked by Robert Allan to take a position with and become a member of the board of directors of the Peoples State Trust & Savings Bank of Pontiac, Michigan. Allan was president of the American State Bank of Detroit and chairman of the board of the Peoples State Trust & Savings Bank. Defendant was also asked to purchase stock in the Pontiac bank and, in order to do so, he borrowed sufficient funds from the American State Bank and gave it as security his 15 shares properly indorsed. Mr. Allan was also president of the State Savings Bank of Melvindale, with whom he discounted defendant's note.

During the summer and fall of 1930, there was some discussion in reference to the sale of defendant's collateral, although, on November 5, 1930, defendant gave the American State Bank a renewal note for $875, payable within 90 days. He testified, however, that although he had had previous conversations with Mr. Allan in reference to selling his collateral so as to get out of debt, at the time of the renewal he demanded that the collateral be sold, and that Allan agreed to sell it at once. At that time the market value of the collateral was in excess of defendant's loan and not only did Mr. Allan tell him that he would sell the stock, but later assured him that the matter had been taken care of. The State Savings Bank of Melvindale in some manner was affiliated with the American State Bank, and defendant's note obviously was turned over to the Melvindale bank because the American State Bank could not make loans with its own stock as collateral. Both banks encountered difficulties, the American State Bank being taken over by another bank and the Melvindale bank being succeeded by plaintiff, which became the owner of the note. An interrelationship

between the two banks is indicated by the facts that they had the same person as president and that defendant's note was sent by the Melvindale State Savings Bank to the American State Bank for collection.

Suit was brought by plaintiff as assignee of defendant's note. Defendant in his answer set forth the entire transaction and also claimed set-off. The latter question becomes unimportant as the trial judge, although holding in defendant's favor, denied him judgment in excess of the amount of the note. Defendant claims no cross-appeal.

Plaintiff contends that the president's powers in a corporation are limited to those stated in the by-laws, which, in this particular instance, provided that the president was to be the presiding officer of the bank, sign all certificates of stock and execute and acknowledge all instruments, under seal or otherwise, which were necessary for the bank to execute. Plaintiff's contention does not conform with the modern view of the duties of a president of a bank. For a full discussion of the subject, see 4 Michie, Banks and Banking (Perm. Ed.), chap. 8, § 7, p. 90, et seq., reference being made to *Wales* v. *Bank of Michigan,* Harr. Ch. (Mich.) 308. Under modern usage and customs the president of a bank, as executive head, is presumed to have the power to act for the bank in its ordinary contracts and agreements and any act of the president, pertaining to the general business, will, in the absence of proof to the contrary, be presumed to have been properly authorized. Many cases supporting this view are set forth in 1 A. L. R. 693, and 67 A. L. R. 970.

The other question raised is whether if a bank agrees to sell the collateral at a time when the price available is in excess of the loan and if the borrower is assured that it has been done, can the borrower later be held on his note in the event of the bank's

failure to carry out the agreement, the collateral having become valueless?  There is a positive showing by uncontradicted testimony that the president did agree to sell the stock and that he assured defendant that the agreement had been carried out.  Showing was also made that, although the disposition of the collateral had been discussed prior to the time of the last renewal of the note, defendant at that time insisted upon sale of the collateral, which, if sold, would have brought more than the amount of the loan plus interest to the date of maturity.

The claim of plaintiff that breach of the agreement to sell is not a bar to recovery on the note, because the agreement was without consideration, is beside the point.  The liability of the pledgee may be founded on negligence as well as on breach of an express contract.  A pledgee has a duty to use at least ordinary care in the preservation of the security pledged and in the protection of the pledgor's interest therein. *Frey* v. *Farmers & Mechanics Bank,* 273 Mich. 284; *W. F. Sheetz & Co.* v. *Commonwealth Commercial State Bank,* 282 Mich. 96; *First National Bank of Blakely* v. *Hattaway,* 172 Ga. 731 (158 S. E. 565, 77 A. L. R. 375) ; *C. H. Larkin Co.* v. *Dawson,* 37 Tex. Civ. App. 345 (83 S. W. 882) ; *Amick* v. *Empire Trust Co.,* 317 Mo. 157 (296 S. W. 798, 53 A. L. R. 1064) ; *Semple & Birge Manfg. Co.* v. *Detwiler,* 30 Kan. 386 (2 Pac. 511) ; *Johnson* v. *First Nat'l Bank of Shellman,* 53 Ga. App. 56 (184 S. E. 915).  The failure of the pledgee to sell the stock upon request may not necessarily be a breach of his duty. *Allen* v. *Hook,* 198 Mich. 122 (L. R. A. 1918A, 441).  However, the facts of this case are quite different from those relied upon in *Allen* v. *Hook, supra.*  Not only did the pledgee agree to sell the stock, but he also informed the pledgor that the stock had been sold according to agreement.  Such repre-

sentations would tend to lull the pledgor into a false sense of security and prevent him from taking other possible steps to protect his interest in the pledge. The failure of the bank to carry out its agreement cannot under these circumstances be considered an exercise of even ordinary care and such negligence will render the bank liable for the loss arising from the depreciation in the value of the stock pledged. *Johnson* v. *First National Bank of Shellman, supra.*

Plaintiff bought the note after maturity and, therefore, is in no better position than its assignor. Having breached its duty to defendant, the bank is liable for its default and cannot recover on the note. The trial court so found.

Judgment for defendant is affirmed, with costs.

Wiest, C. J., and Bushnell, Sharpe, Potter, Chandler, North, and McAllister, JJ., concurred.