ALEXANDER v. GLASS.

1. Banks and Banking—Receivers.
   It is the sole duty of the receiver of a bank to liquidate the affairs of the bank.

2. Same—Pledge of Stock—Public Auction—Fair Value.
   At public auction of stock pledged with bank of which pledgor had been given notice by bank receiver, it was as much the pledgor's duty as the receiver's to make an effort to secure the fair value of the stock.

3. Same—Public Auction of Collateral—Market Value—Negligence.
   In pledgor's action against bank receiver for alleged negligence in failing to ascertain the market value of plaintiff's unlisted locally traded stock before public auction, in failing to bid at the sale so at least the market value thereof would be realized, and in selling it for less than market value, where receiver, acting under instructions from State banking com-

Pledgee's duty to sell pledged chattel at fair approximation of market value, see Restatement, Security, § 49.

missioner to bid at sales of such collateral only at its then ascertained market value, failed to bid when stock was sold at par and for more than amount previously quoted to receiver that same day by a brokerage firm, receiver's failure to do more would not render him liable herein to plaintiff who himself failed to attend the sale.

4. Pledges—Pledgee's Liability for Sale of Stock—Negligence —Breach of Contract.

The liability of a pledgee for failure to sell pledged security and protect pledgor may be founded upon negligence as well as upon breach of an express contract.

5. Same—Pledgee's Duty of Care.

A pledgee has a duty to use at least ordinary care in the preservation of the security pledged and in the protection of the pledgor's interest therein.

6. Same—Unlisted Stock—Sale.

The court will not enter into an investigation of the financial affairs of corporation whose stock which had been pledged was sold at public auction where stock is unlisted, pledgee made an effort to ascertain the then market value thereof and sold it at par although he did not bid at the sale, and plaintiff pledgor was not present.

7. Banks and Banking—Negligence of Receiver in Sale of Pledged Collateral—Evidence.

Pledgor of stock as collateral to loan with bank may not recover for alleged negligence of bank's receiver, the defendant, where latter obtained but 10 or 11 per cent. less for such collateral at public auction of which plaintiff had notice than plaintiff's informal appraisal which had been obtained shortly prior to the sale without clear and convincing proof of such negligence with respect to sale of items of which complaint is made.

Appeal from Kent; Hoffius (Cornelius), J. Submitted April 16, 1941. (Docket No. 71, Calendar No. 41,561.) Decided June 30, 1941. Rehearing denied September 2, 1941.

Action by Charles H. Alexander against Harry Glass, Sr., individually and as receiver of the American Home Security Bank, for damages alleged to

be sustained in sale of collateral. Judgment for plaintiff. Defendant appeals. Reversed and judgment of no cause of action ordered entered.

*Laurence D. Smith,* for plaintiff.

*John M. Dunham,* for defendant.

NORTH, J. Defendant, in a suit at law tried before the circuit judge without a jury, has appealed from a judgment in the amount of $625 for damages which plaintiff alleges he sustained incident to the sale of certain collateral he had deposited to secure payment of his indebtedness to the American Home Security Bank of Grand Rapids. Defendant, Harry Glass, Sr., was appointed receiver of the bank and charged with the administration of its affairs for the purpose of liquidation. In July, 1939, the receiver took judgment totaling $21,000 on two notes which plaintiff theretofore had given the bank. In addition to other collateral security for payment of these notes there were 125 shares of stock in the Preferred Automobile Insurance Company. The par value of this stock was $10 per share. On or about October 25, 1939, plaintiff received written notice from defendant that the collateral he had deposited with the bank would be sold at public vendue at 10 a. m., November 9, 1939, at the north front door of the court house in Grand Rapids. Such sale was held and plaintiff's stock in the insurance company was sold after competitive bidding at its par value of $10 per share. That was the highest bid made. There is no complaint that the manner of sale was not authorized (see 2 Comp. Laws 1929, §§ 9561, 9562 [Stat. Ann. §§ 19.411, 19.412]) or that there was any fraud in connection with the sale. But plaintiff, not being financially able to redeem his stock, alleges defendant owed to plaintiff the duty

of using "due diligence in selling said collateral and in protecting plaintiff's interest therein;" and further, that the defendant receiver violated his duties and his trust relation to plaintiff in the following particulars: (1) by failing to ascertain the market value of the pledged stock prior to the sale, (2) by failing to bid at the sale so that at least the market value of plaintiff's pledged stock would be realized, and (3) by selling said stock at public sale for a less amount than its market value.

It is the contention of appellant that under the record in this case the trial judge was in error in finding such negligence on the part of defendant in the sale of plaintiff's stock as rendered defendant liable in damages to plaintiff on the sole claim of inadequacy of the sale price. We quote from appellant's brief:

"Plaintiffs sought recovery solely on the alleged negligence of defendant. The conclusion of the trial court is based solely upon that proposition. Here a sale is made at par of a local unlisted stock. We contend that it is wholly unnecessary for a pledgee to enter upon an extensive investigation of the financial affairs of such a corporation, nor is it necessary to make repeated inquiries of various brokerage houses to obtain quotations upon such stock. Reasonable prudence and diligence do not require such steps. To hold against our contention is to hold that every bank or other pledgee makes any sale at its peril. It would place the burden of proof upon the pledgee in all cases rather than to require the pledgor to prove actual negligence or bad faith."

As bearing upon decision herein the following is important. The stock sold was that of a local concern. It had no general listing on the stock market, and dealings therein were of a local and private

character.   The pledge agreement under which plaintiff deposited this stock with the bank authorized its sale in event plaintiff defaulted in payment of his obligation to the bank "at any time thereafter without demand, advertisement or notice of any kind * * * at any brokers' board or at public or private sale."   Notwithstanding the right to do otherwise the receiver gave plaintiff ample written notice of the public sale of this collateral.   While plaintiff claims he knew the market value of this stock to be in excess of its par value he did not attend the sale in person or by representative.   The sale was not conducted by the receiver personally; but instead, the details of this sale, as in many others of like character, were in charge of a Mr. Stough, one of defendant's assistants.   On the morning of the sale Mr. Stough made an inquiry of a brokerage firm, Continental Securities Corporation, as to the then market value of this stock. This firm was one of the local concerns to which Mr. Stough had often applied for information of like character, and the good faith and propriety of his inquiry is not questioned herein.   Mr. Stough was informed that this firm would buy the stock at $8 per share.   At the sale he opened the bid at the figure he had been given by this brokerage firm.   His bid was raised by a representative of the brokerage firm   of   MacNaughton-Greenawalt   &   Company, through which a considerable number of sales of this particular stock had been transacted.   This representative made the final and highest bid and the stock was sold to him or his firm at its par value of $10 per share.

At the trial, over defendant's objection, evidence was received from which it appeared that about eight months prior to the sale the MacNaughton

brokerage firm had made a written offer of $11.50 per share to the receiver for any stock he might have for sale in the Preferred Automobile Insurance Company. While this offer was retained in the bank's files, neither the receiver nor Mr. Stough seems to have had it in mind at the time of the sale. And in this connection it may be noted there is no testimony in the record that at the time this sale was held the MacNaughton firm would have paid more than par value for the stock or how much more, if any. Plaintiff also offered the testimony of a bookkeeper of MacNaughton-Greenawalt & Company from which it appeared that numerous sales of this stock at varying prices had been made by, to, or through this firm over a period of months preceding and succeeding the receiver's sale on November 9, 1939. Some of these sales were as high as $20 per share; but those transactions more closely in point of time to the sale here involved disclose purchases by the MacNaughton firm from its "own long account" at $10 per share and sales at $14 or $15 per share. It also discloses that there was substantial fluctuation in the stock at comparatively short intervals. And it is a fair inference from the record that the activity in this particular stock at or about the time in question was very much influenced by an attempt on the part of certain persons to obtain control of the Preferred Automobile Insurance Company, or possibly to bolster the market price of its stock. There is also testimony in behalf of plaintiff that the book value of the stock was in excess of its par value; and further the fact is disclosed that a little more than a month after the sale of plaintiff's collateral, on defendant's petition, the circuit court in chancery authorized a sale by

him of Preferred Automobile Insurance Company's stock at $14 per share.

Notwithstanding the testimony offered by plaintiff, we are of the opinion that this record does not show the receiver was guilty of negligence or of failure to deal fairly with plaintiff in the sale of this stock. The receiver was not in the market buying stock as an investment for the bank. Instead, his sole duty was to liquidate the affairs of the bank. And, further, the undisputed record is that the State banking commissioner instructed the receiver to bid at sales of collateral of this character only its then ascertained market value. There might be occasion for more closely scrutinizing the record if this collateral had been disposed of at private sale or without notice to plaintiff, or if the stock had been purchased by the receiver. But under the circumstances here disclosed it was as much the duty of plaintiff as it was of defendant to make an effort to secure at this sale the fair value of the stock. In fact, under the direction of the banking commissioner who controlled his course of conduct, the receiver was restricted in the amount he could bid; and we think the course of action pursued by Mr. Stough, acting in behalf of the receiver, to ascertain what that limitation was is all that should be required. At least, failure to do more under the circumstances of this case was not a neglect of duty upon the part of the receiver such as would render him liable in a suit of this character. The law requires only ordinary care on the part of a pledgee to protect the interests of a pledgor.

"The liability of the pledgee may be founded on negligence as well as on breach of an express con-

tract.  A pledgee has a duty to use at least ordinary care in the preservation of the security pledged and in the protection of the pledgor's interest therein." *Melvindale State Bank* v. *Eckfeld,* 283 Mich. 179, 183, citing numerous cases.

In the instant case it may be said as in *Wilkes* v. *Allegan Fruit & Produce Co.,* 233 Mich. 215, quoting from the syllabus:

"Where the sale at par of pledged stock without notice to the pledgor, on default, was valid, the court will not enter into an investigation of the financial affairs of the corporation on the claim that the sale should be set aside because the stock was worth more than par, under the evidence in this case."

We note one other fact of some importance on this appeal.  Just prior to the sale of plaintiff's collateral, which consisted of a group of bonds and stocks, he forwarded to defendant's attorney a so-called informal appraisal thereof in which he fixed the total value of all his securities held as collateral at $4,932.50.  The amount realized at the sale was $4,395.  This was only $537.50 less than plaintiff's own appraisal.  At the sale there was realized an amount only 10 or 11 per cent. less than plaintiff's own estimate or appraisal.  A sale of collateral so conducted can hardly be said to disclose negligence on the part of the pledgee.  At least, if as to the sale of a particular item of collateral the pledgor claims the pledgee was guilty of negligence or disregard of his trust obligation, recovery should not be had except upon clear and convincing proof.

Because we deem it unnecessary to decision, we forego passing on appellant's contention that much of plaintiff's testimony offered bearing upon the

value of stock sold pertained to transactions so remote in point of time as to render the testimony either wholly inadmissible or of no substantial probative force.

We are of the opinion that the judgment entered in the circuit court was contrary to the clear weight of evidence and should be reversed. It is therefore ordered that the judgment entered be reversed and the case remanded to the circuit court for the entry of a judgment of no cause of action. Appellant will have costs of both courts.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, WIEST, and BUTZEL, JJ., concurred. McALLISTER, J., took no part in this decision.